(590 P.2d 597)

No. 49,596

State of Kansas, *Appellee,* v. Rex C. Hanes, *Appellant.*

Opinion filed February 16, 1979.

*Robert W. Feiring,* of Kansas City, for appellant.

*Dennis L. Harris,* Assistant District Attorney, *Nick A. Tomasic,* District Attorney, and *Curt T. Schneider,* Attorney General, for appellee.

Before Rees, P.J., Parks and Swinehart, JJ.

Rees, J.: Defendant was tried to the court on stipulated facts and found guilty of involuntary manslaughter contrary to K.S.A. 21-3404. The sole issue on appeal is whether the search of defendant's apartment was an unreasonable search proscribed by the Fourth Amendment.

A brief recitation of relevant facts is appropriate. At approximately 12:45 a.m., on January 9, 1977, defendant summoned police to a building in Kansas City, Kansas, where he resided in an apartment. Officer Jordan was dispatched in response to defendant's call. Upon arrival, Jordan found Dee Ann Gonzales lying on her back across the front entrance of the building. There was a pool of blood by her head. The front door to the building was open and the glass screen and storm window were broken out. Defendant informed Jordan that Gonzales had been hurt, leading Jordan to believe she had fallen through the glass door and sustained a severe head injury.

Jordan accompanied defendant and Gonzales to Bethany Hospital where defendant first informed Jordan that he had heard gunshots. An X-ray examination of Gonzales revealed a bullet lodged in her head. Defendant was transported to police headquarters to be questioned as a possible witness. Jordan radioed for assistance and immediately returned to the building where he

had initially found Gonzales. His trip to the hospital and back took approximately one hour.

Jordan waited for detectives to arrive. When they came, an investigation of the scene was begun. The detectives entered the front door of the building, observing the pool of blood where Jordan had found Gonzales. Immediately inside the front door in a vestibule or hallway were blood stains on a wall. A bullet fragment was recovered near the front door. The detectives observed the door from the hallway into defendant's apartment had been demolished; its locks and panels were broken out. The apartment was entered and blood stains were found inside. The detectives then searched the entire apartment. The search netted a .38 caliber derringer, ammunition and a holster that were seized. A subsequent KBI laboratory report indicated that the bullet taken from the victim's head and the bullet fragment found near the front door were the same type of ammunition as that found in the apartment.

The State concedes the search was made without a warrant, in defendant's absence, without defendant's consent, and not incidental to an arrest. The State relies solely on the trial court reasoning to validate the search. Citing case authority it found supportive, the trial court held as follows:

"In this case, it is stipulated that Officer Jordan lawfully entered the premises initially. Clearly, the weight of authority holds that where a lawful entry is made by the officer, at least in homicide cases, either by consent or invitation or by reason of a reasonable belief of emergency on the part of the officer, he has a duty as well as the right to process the scene to determine what happened, and that so long as the premises are under police control, a warrantless search is an exercise of legitimate police investigative procedures. . . .

. . . . .

"The circumstances here show that when Officer Jordan arrived at the scene in response to a call for help, he found the victim badly injured by what he was led to believe was an accident. He had no reason at this point to suspect defendant, so he and the defendant immediately rushed the victim to the hospital. Upon learning for the first time that the victim had been shot, the defendant was taken to police headquarters, and Jordan radioed for help and immediately returned to the premises. There he waited in accordance with police procedures until the detectives arrived. At 2:00 a.m. or later in the morning, it would have been very difficult to obtain a warrant. In the meantime, if defendant was not the guilty person, valuable time and evidence might have been lost. In my opinion, under the circumstances here, the conduct of the police officers was entirely reasonable and the defendant's constitutional rights were not violated. The defendant's motion to suppress is therefore denied."

Warrantless searches are per se unreasonable under the Fourth Amendment subject to a few specifically established and well delineated exceptions. The burden of proof is on the prosecution to show that a given exception is applicable. *Mincey v. Arizona,* 437 U.S. 385, 57 L.Ed.2d 290, 298-299, 98 S.Ct. 2408 (1978); *State v. Schur,* 217 Kan. 741, 743, 538 P.2d 689 (1975).

The trial court did not have the benefit of the recent *Mincey* decision when it ruled on defendant's motion to suppress. In *Mincey,* an undercover officer accompanied by nine plain clothes detectives made a narcotics "bust" at an apartment. Shots were exchanged. A police officer was killed. The defendant and several of his accomplices were wounded. After searching the apartment for other suspects, the detectives called an investigative unit because, pursuant to regulations, the detectives were not to investigate incidents in which they were involved. Homicide detectives arrived within ten minutes and took over the investigation. An extensive warrantless four-day search was made of defendant's apartment. Everything in it was searched, photographed and diagrammed. Two to three hundred objects were seized. The United States Supreme Court found the search to be in violation of the Fourth Amendment.

One of the prosecution's arguments in *Mincey* was that a warrant was not required in an emergency situation demanding immediate action. The court responded:

"We do not question the right of the police to respond to emergency situations. Numerous state and federal cases have recognized that the Fourth Amendment does not bar police officers from making warrantless entries and searches when they reasonably believe that a person within is in need of immediate aid. Similarly, when the police come upon the scene of a homicide they may make a prompt warrantless search of the area to see if there are other victims or if a killer is still on the premises. Cf. Michigan v Tyler, [436 U.S. 499] at 509, 56 L Ed 2d 486, 98 S Ct 1942. 'The need to protect or preserve life or avoid serious injury is justification for what would otherwise be illegal absent an exigency or emergency.' Wayne v United States, 115 U S App D C 234, 241, 318 F 2d 205, 212 (opinion of Burger, J.). And the police may seize any evidence that is in plain view during the course of their legitimate emergency activities. Michigan v Tyler, supra, at 509, 56 L Ed 2d 486, 98 S Ct 1942; Coolidge v New Hampshire, 403 U S at 465-466, 29 L Ed 2d 564, 91 S Ct 2022.

"But a warrantless search must be 'strictly circumscribed by the exigencies which justify its initiation,' Terry v Ohio, 392 U S at 25-26, 20 L Ed 2d 889, 88 S Ct 1868, 44 Ohio Ops 2d 383, and it simply cannot be contended that this search was justified by any emergency threatening life or limb. All the persons in Mincey's apartment had been located before the investigating homicide officers

arrived there and began their search. And a four-day search that included opening dresser drawers and ripping up carpets can hardly be rationalized in terms of the legitimate concerns that justify an emergency search." 57 L.Ed.2d at 300.

The court emphasized the exigent circumstances requirement necessary for warrantless searches:

"Except for the fact that the offense under investigation was a homicide, there were no exigent circumstances in this case, as, indeed, the Arizona Supreme Court recognized. 115 Ariz, at 482, 566 P 2d at 283. There was no indication that evidence would be lost, destroyed or removed during the time required to obtain a search warrant. Indeed, the police guard at the apartment minimized that possibility. And there is no suggestion that a search warrant could not easily and conveniently have been obtained. We decline to hold that the seriousness of the offense under investigation itself creates exigent circumstances of the kind that under the Fourth Amendment justify a warrantless search." 57 L.Ed.2d at 301.

The cases relied upon by the trial court in denying defendant's motion to suppress generally involve on-the-scene homicide investigations. *Mincey* makes it clear that the seriousness of the offense under investigation does not alone create exigent circumstances sufficient to justify a warrantless search. Thus, several of the cases relied upon by the trial court have limited precedential value for this reason alone. All cases cited by the trial court were decided prior to *Mincey* and are factually distinguishable. See *Lonquest v. State,* 495 P.2d 575 (Wyo.), *cert. denied* 409 U.S. 1006 (1972); *State v. Chapman,* 250 A.2d 203 (Me. 1969); *People v. Wallace,* 31 Cal. App. 3d 865, 107 Cal. Rptr. 659 (1973); *Stevens v. State,* 443 P.2d 600 (Alaska 1968), *cert. denied* 393 U.S. 1039 (1969); *State v. Oakes,* 129 Vt. 241, 276 A.2d 18, *cert. denied* 404 U.S. 965 (1971); *Brown v. State,* 475 S.W.2d 938 (Tex. Crim. 1971); *State v. Sample,* 107 Ariz. 407, 489 P.2d 44 (1971), reversed in *Sample v. Eyman,* 469 F.2d 819 (9th Cir. 1972).

Prior to *Mincey,* the Colorado Supreme Court rejected the argument that a new exception to the warrant requirement should be adopted for on-the-scene investigations of recent homicides. It was pointed out that such an exception is not necessary because the already recognized exigent circumstances exception is sufficient to allow warrantless searches when police necessity to search outweighs the interest in protecting privacy. *People v. Williams,* 192 Colo. 249, 557 P.2d 399, 404-405 (1976).

Another relevant case is *Root v. Gauper,* 438 F.2d 361 (8th Cir. 1971). There the victim of the shooting called the telephone operator stating that his wife had shot him and asked that an

ambulance be called. An ambulance was summoned and the police were notified. The ambulance attendants arrived prior to the police and transported the unconscious victim to the hospital for treatment of a shotgun wound to the stomach. On the way to the hospital, the ambulance passed the police en route to the victim's home. The attendants informed the police by radio communication that they had removed the victim from his home. The victim was dead on arrival at the hospital. Upon reaching the victim's home, the police conducted a warrantless search of the premises and seized certain items. The Eighth Circuit Court found the search unreasonable in violation of the Fourth Amendment. It rejected the prosecution arguments that the plain view exception was applicable, that the victim consented to the officers' entry into his home, or that the officers' entry was justified by the emergency doctrine. 438 F.2d at 364-365.

In the present case, defendant summoned the police to aid an injured person. That a crime probably had occurred was not discovered until after defendant and Officer Jordan reached the hospital. The victim was found in a hallway *outside* defendant's apartment. Defendant did not invite the officers into his apartment or consent to its search. Nevertheless, a warrantless search of the apartment was made. It is true the evidence in the hallway and the broken door to defendant's apartment might lead one to suspect further evidence of the crime could be found inside the apartment. It also is true that when the search was conducted, at about 2:00 a.m., it might have been difficult to promptly obtain a search warrant.

Yet, after examining the stipulated facts, we find no indication that the search of defendant's apartment was made for suspects or other possible victims of the crime. It is not argued or shown that it was thought an emergency existed, only that a possible homicide had occurred. As seen in *Mincey,* this alone is insufficient to justify a warrantless search. No showing or argument is made that it was not practical to secure the premises until a search warrant was obtained. There is no indication that evidence would be lost, destroyed or removed during whatever time would have been necessary to obtain a search warrant. Absent exigent circumstances, the warrantless search of defendant's apartment was in violation of the Fourth Amendment. The evidence defendant sought to suppress, fruit of the unlawful search, was erroneously admitted.

We reverse and remand for new trial. Further, we direct that an order be entered granting defendant's motion to suppress any and all evidence seized during the search of his apartment, but not that seized in the hallway or elsewhere outside the apartment.