(655 P.2d 140)
No. 54,662

STATE OF KANSAS, *Appellant,* v. BARBARA J. MITCHELL, *Appellee.*

Opinion filed December 16, 1982.

*James L. Wisler,* county attorney, and *Robert T. Stephan,* attorney general, for the appellant.

*Orville J. Cole* of Cole & Doering, of Garnett, for the appellee.

Before SPENCER, P.J., PARKS, J., and HARRY G. MILLER, District Judge Retired, assigned.

SPENCER, J.: This is an interlocutory appeal by the State pursuant to K.S.A. 22-3603. The sole issue presented is whether a spent .22 caliber shell casing found in defendant's enclosed yard, the scene of an alleged murder, was properly suppressed by order of the court as having been obtained in the course of an unreasonable search and seizure.

On the morning of March 30, 1982, the Linn County Sheriff was notified by radio that one Floyd Mitchell, who had lived near Blue Mound, Kansas, had been shot and was en route by

ambulance to the medical clinic in Mound City. The sheriff met the ambulance at the clinic where Floyd was pronounced dead as a result of a gunshot wound in the back. Upon being informed by the ambulance driver that a rifle had been seen near the body in the yard of the Mitchell residence, the sheriff directed a deputy to go to the residence to pick it up. The deputy went to the residence, entered the yard through a gate, and picked up a rifle, a red bill cap, and a belt buckle. Defendant, wife of Floyd, had accompanied the body of her husband to the clinic in the ambulance and while at the clinic the morning of March 30 was arrested in connection with his death. During the afternoon of March 30 she was charged with first degree murder.

The next day the sheriff, the county attorney, the ambulance driver, and one of the attendants went to the Mitchell residence for the purpose of taking photographs of the location of decedent's body as it had been found in the yard. While there, the sheriff noticed an empty shell casing on a ledge near the north door of the house, which door opens into the yard in which the body was found. That shell casing was seized.

All of the foregoing was accomplished without the formality of a search warrant, although a search warrant was thereafter issued listing guns, clothing and spent shell casings, and returned "no items found."

The Mitchell house and yard were enclosed in part by a stone wall of a decorative type, approximately 3 to 3½ feet high. The wall separated the driveway leading to the premises and the Mitchell yard. Entry into the yard was made through an unlocked wire gate in the east side of the wall.

At the preliminary hearing, the rifle, some live rounds of .22 caliber ammunition found in the magazine of that rifle, and the spent cartridge casing were admitted into evidence over defendant's objection. Upon renewal of the motion to suppress before the trial court, an order was entered in part as follows:

"IT IS THEREFORE THE ORDER OF THE COURT that the motion of the defendant to suppress Exhibit 'I,' a .22 Remington Semi-automatic rifle, and Exhibit 'N,' live rounds in magazine of said rifle, be and the same hereby is overruled.

"With respect to Exhibit 'K,' a cartridge casing discovered by Sheriff Troth the following day while making an investigation of the death scene for the specific purpose of taking photographs, there is a slightly different situation. Time had elapsed, a search warrant could have been obtained without difficulty, the Sheriff

had in his possession a semi-automatic rifle which may have been used in the commission of the crime, and had reason to believe that if said rifle had been fired, due to the nature of the action of the weapon, that an empty cartridge case would have been ejected therefrom. The Court, therefore, finds with respect to State's Exhibit 'K,' the spent cartridge casing, that a search warrant should have been obtained by the Sheriff, and that the motion of defendant to suppress Exhibit 'K' should be sustained."

It is to be borne in mind that we are here concerned only with the admissibility of the spent shell casing, and this opinion does not speak to the propriety of the court order with respect to the rifle or the live rounds of ammunition.

In *State v. Platten,* 225 Kan. 764, 594 P.2d 201 (1979), it was held:

"Searches conducted without a warrant issued on probable cause are 'per se' unreasonable under the Fourth Amendment to the United States Constitution and Section 15 of the Kansas Constitution Bill of Rights subject only to a few specifically established and well-delineated circumstances." Syl. ¶ 3.

"The Fourth Amendment and Section 15 of the Kansas Constitution Bill of Rights protect a citizen's reasonable expectations of privacy and one's reasonable expectation of privacy in his own home is entitled to unique sensitivity." Syl. ¶ 4.

"The burden of proof is on the State to show circumstances justifying an exception to the warrant requirement." Syl. ¶ 7.

See also *State v. Galloway,* 232 Kan. 87, 652 P.2d 673 (1982).

Defendant contends the search which resulted in seizure of the item in question was not incident to her arrest as it took place some ten miles away on the day following her arrest; there were no exigent circumstances which would justify a warrantless search; she had not given her consent to a search; and finally, the entry onto that portion of her yard adjacent to her residence, which was enclosed by a stone wall, was an intrusion onto the curtilage protected against warrantless search and seizure as a part of her home.

The State presented three arguments in support of the warrantless search and seizure of evidence from defendant's front yard: (1) the yard was not a constitutionally protected area, (2) an exception for a death scene investigation, and (3) the plain view doctrine.

In *State v. Hanes,* 3 Kan. App. 2d 125, 590 P.2d 597, *rev. denied* 225 Kan. 846 (1979), the court expressly rejected the State's second argument. The seriousness of a homicide investigation alone did not create exigent circumstances justifying the warrantless search of an apartment. The court quoted and fol-

lowed the holding in *Mincey v. Arizona,* 437 U.S. 385, 57 L.Ed.2d 290, 98 S.Ct. 2408 (1978), in which the police had conducted an extensive warrantless four-day search of a residence.

This case is distinguishable from *Hanes* in that the search and seizure occurred outside the residence. In *Katz v. United States,* 389 U.S. 347, 351-52, 19 L.Ed.2d 576, 88 S.Ct. 507 (1967), the United States Supreme Court stated:

"For the Fourth Amendment protects people, not places. What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection. [Citations omitted.] But what he seeks to preserve as private, even in an area accessible to the public, may be constitutionally protected."

In 68 Am. Jur. 2d, Searches and Seizures § 20, we find:

"However, the word 'houses,' used in the Fourth Amendment, has been enlarged by the courts to include the curtilage, or ground and buildings immediately surrounding a dwelling, an area which was usually enclosed in former times; the reach or scope of this curtilage depends on the facts of any given case.

"When a substantial fence is erected to enclose the area around the dwelling and outbuildings habitually used and necessary and convenient for family purposes, such a fence ordinarily defines the curtilage, particularly in a rural area. Thus, although objects seized on the lawn or grounds around a house are ordinarily not protected by the constitutional provision against unreasonable searches and seizures, a person who surrounds his backyard with a fence, and limits entry with a gate, locked or unlocked, has shown a reasonable expectation of privacy for the area, and it is protected from unreasonable search and seizure by the Fourth Amendment."

The State contends the search and seizure of the shell casing were justified under the "plain view" doctrine. However, as stated in *Coolidge v. New Hampshire,* 403 U.S. 443, 468, 29 L.Ed.2d 564, 91 S.Ct. 2022, *reh. denied* 404 U.S. 874 (1971):

"[P]lain view *alone* is never enough to justify the warrantless seizure of evidence. This is simply a corollary of the familiar principle discussed above, that no amount of probable cause can justify a warrantless search or seizure absent 'exigent circumstances.'"

See *State v. Schur,* 217 Kan. 741, 744, 538 P.2d 689 (1975).

Defendant's residence was located one-eighth mile from a public road, along a private driveway. The house and yard were enclosed in part by a stone wall with a wire gate permitting access. Clearly defendant has shown a reasonable expectation of privacy for that area which we conclude was protected from unreasonable search and seizure by the Fourth Amendment and

by Section 15 of our Bill of Rights. The seriousness of a homicide investigation alone does not create exigent circumstances sufficient to justify a warrantless search of a constitutionally protected area. Absent such, plain view alone was not sufficient to justify the warrantless seizure of evidence.

Affirmed.