Shirley F. GREEN, Anna M. Davis, and William L.S. Davis, Plaintiffs,

v.

The CITY OF WICHITA, KANSAS, Jay Stalkup, individually and in his official capacity as Housing Inspector for the City of Wichita, Kansas, Lisa Kilbourn, individually and in her official capacity as Housing Inspector for the City of Wichita, Kansas, and Julie Irwin, individually and in her official capacity as Housing Inspector for the City of Wichita, Kansas, Defendants.

No. 97–4165–DES.

United States District Court, D. Kansas.

April 14, 1999.

Cortland E. Berry, Newton, KS, for plaintiffs.

Kelly J. Rundell, Gary E. Rebenstorf, City of Wichita, Law Department, Wichita, KS, for defendants.

## MEMORANDUM AND ORDER

SAFFELS, District Judge.

This matter is before the court on the defendants' Motion for Summary Judg-

ment (Doc. 58). Both parties have submitted briefs on this matter and the court is ready to rule.

## I. FACTUAL BACKGROUND

This case involves numerous claims based upon alleged improper activities undertaken by the defendants in enforcing the City of Wichita's housing code. The plaintiffs owned property located in Wichita, Kansas, that was held as rental property. The plaintiffs were issued numerous citations by the defendants for alleged violations of the housing code. In addition, the defendants placed placards on some of the property of the plaintiffs which hindered the plaintiffs' ability to rent and sell the properties. The plaintiffs claim that these citations were not proper and were the result of improper motives and malicious intent on the part of the defendants. The plaintiffs also complain of the defendants' inspection of their properties without their permission or probable cause.

The defendants claim that they acted within their authority in issuing the citations for the housing code violations and placing the placards on the property. They deny that any improper motives were present. The defendants also claim that the inspections were proper under the law.

The claims brought forth by the plaintiffs include defamation, tortious interference with contract rights, outrage, abuse of legal process, equal protection, denial of substantive and procedural due process, unconstitutional taking of property, conspiracy in violation of § 1985, and antitrust violations.

Additional facts will be discussed below when necessary.

## II. SUMMARY JUDGMENT STANDARD

A court shall render summary judgment upon a showing that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The rule provides that "the mere existence of *some* alleged factu-

al dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The substantive law identifies which facts are material. *Id.* at 248, 106 S.Ct. 2505. A dispute over a material fact is genuine when the evidence is such that a reasonable jury could find for the nonmovant. *Id.* "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.*

The movant has the initial burden of showing the absence of a genuine issue of material fact. *Shapolia v. Los Alamos Nat'l Lab.,* 992 F.2d 1033, 1036 (10th Cir. 1993). The movant may discharge its burden "by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The movant need not negate the nonmovant's claim. *Id.* at 323, 106 S.Ct. 2548.

Once the movant makes a properly supported motion, the nonmovant must do more than merely show there is some metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The nonmovant must go beyond the pleadings and, by affidavits or depositions, answers to interrogatories, and admissions on file, designate specific facts showing there is a genuine issue for trial. *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548 (interpreting Fed. R.Civ.P. 56(e)). Rule 56(c) requires the court to enter summary judgment against a nonmovant who fails to make a showing sufficient to establish the existence of an essential element to that party's case, and on which that party will bear the burden of proof. *Id.* at 322, 106 S.Ct. 2548. Such a complete failure of proof on an essential

element of the nonmovant's case renders all other facts immaterial. *Id.* at 323, 106 S.Ct. 2548.

A court must view the facts in the light most favorable to the nonmovant and allow the nonmovant the benefit of all reasonable inferences to be drawn from the evidence. *See, e.g., U.S. v. O'Block,* 788 F.2d 1433, 1435 (10th Cir.1986) (stating that "[t]he court must consider factual inferences tending to show triable issues in the light most favorable to the existence of those issues"). The court's function is not to weigh the evidence, but merely to determine whether there is sufficient evidence favoring the nonmovant for a finder of fact to return a verdict in that party's favor. *Anderson,* 477 U.S. at 249, 106 S.Ct. 2505. Essentially, the court performs the threshold inquiry of determining whether a trial is necessary. *Id.* at 250, 106 S.Ct. 2505.

## III. DISCUSSION

### A. Immunity under the Kansas Tort Claims Act

The defendants contend that all claims brought under Kansas law should be barred because the Kansas Tort Claims Act ("KTCA") provides immunity for the alleged improper actions. Kan.Stat.Ann. § 75–6104 provides immunity to governmental entities and employees acting within the scope of their employment for damages resulting from:

(c) enforcement of or failure to enforce a law, whether valid or invalid, including, but not limited to, any statute, rule and regulation, ordinance or resolution;

(e) any claim based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a governmental entity or employee, whether or not the discretion is abused and regardless of the level of discretion involved;

(k) the failure to make an inspection, or making an inadequate or negligent inspection, of any property other than the property of the governmen-

tal entity, to determine whether the property complies with or violates any law or rule and regulation or contains a hazard to public health or safety.

The defendants claim that each of these provisions in the KTCA provide them with immunity from the state law claims in this case.

■ The court finds that Kan.Stat.Ann. § 75–6104(k) is not applicable to this case. The thrust of subsection (k) is to protect governmental entities and employees from injuries that occur on property that was unsafe and had not been properly inspected by the housing authorities. The very language of this section shows that it provides immunity for "the failure to make an inspection, or making an inadequate or negligent inspection." The plaintiffs are not alleging injuries arising out of a failure to make an inspection or the making of an inadequate inspection. Rather, they are claiming that the inspections which took place, and the resulting citations, were improper. Kan.Stat.Ann. § 75–6104(k) does not provide immunity to the defendants in this case.

■ The plaintiffs claim that the "enforcement of law" provision provides no relief to the defendants either. The plaintiffs rely on *Cansler v. State,* 234 Kan. 554, 675 P.2d 57 (1984), to support their contention that Kan.Stat.Ann. § 75–6104(c) is inapplicable under the facts of this case.

In *Cansler,* a city police officer filed a personal injury action against numerous state and county officials based upon a negligence theory under the KTCA. Mr. Cansler, who was a police officer with the Bonner Springs, Kansas, police department, was shot several times by inmates who had escaped from the Kansas State Penitentiary. The mistakes made by the defendants leading up to the plaintiff's injuries gave rise to the cause of action for negligence.

In *Cansler,* a complete guard's uniform was missing from the prison laundry some-

time in early September 1981. Prison officials were aware of the missing uniform but did not inform the guards. On September 6, 1981, an inmate who had access to the interprison phone line called the guard who was on duty in tower No. 12 and informed him that he was relieved of duty. Shortly thereafter, an inmate wearing the stolen guard uniform approached and was admitted to tower No. 12. The inmate overpowered the guard on duty and let six other prisoners into the tower. The prisoners took two riot guns, one .38–caliber revolver and one .30–.30 rifle. The seven inmates, all of whom were serving life sentences for murder, then escaped over the prison wall.

The prisoners were seen escaping by other guards at the prison. However, the guards were unable to alert others because the alarm system at the prison, which consisted of a siren loud enough to alert people for a one-mile radius, had been inoperable for some years and the available telephones in the prison were busy. At about 9:00 o'clock that morning, the prison officials alerted the Leavenworth County Sheriff's office of the happenings at the prison. The sheriff's office dispatcher alerted several deputies and the Leavenworth city police. The dispatcher did not call the Wyandotte County Sheriff's office, even though the county line was approximately three miles from the prison. The dispatcher did prepare a teletype message and entered it into the computer, but the computer was down and the message was never transmitted.

Cansler was on routine patrol in Bonner Springs when he noticed a car illegally pass another car on the right side of the road. He attempted to pull the car over but the driver fled. He soon came upon the car in the ditch and noticed the occupants fleeing the scene. Cansler had contacted the Wyandotte County Sheriff's office for backup, but was unaware that the men had just escaped from the prison. Cansler pursued the men and came upon a house the men had entered to take refuge. As he approached the house, he was shot three times by a high-powered rifle.

Cansler sued the various defendants claiming they had been negligent in their detention of the prisoners and that negligence led to his injuries. The defendants claimed that they were entitled to immunity under Kan.Stat.Ann. § 75–6104(c) because they were engaged in the "enforcement of ... a law." The defendants claimed that because they were required under the law to take custody of the inmates, they fell within the immunity of subsection (c). In rejecting this argument, the Kansas Supreme Court stated:

> That section does not provide an exemption where the agency, in enforcing or failing to enforce a law, commits some additional tortious act or omission which would be negligence at common law, and which act or omission causes damage.

*Cansler*, 675 P.2d at 68. The court went on to explain that the claim fell outside the immunity provisions of the KTCA because

> the claim [was] not based upon the State's simple acts of retaining or failing to retain custody of the inmates; the claim [was] based upon the State's failing in its common law duty to retain custody of known dangerous persons, in giving them access to high-powered firearms, in permitting them to escape confinement while armed, and in failing to warn the public and nearby on-duty law enforcement personnel, including the plaintiff, of the escape.

*Id.* at 68–69.

The court finds the facts of this case are very different from those in the *Cansler* case. All of the allegations in this case stem from the defendants' actions in enforcing the housing code. The plaintiffs claim damages resulting from the issuance of citations, improper inspections, and placarding of the properties involved in this case. All of these actions are included in the defendants' duties to enforce the housing code. Unlike the *Cansler* case, the plaintiffs in this case have not advanced any alleged improper conduct that is based on anything other than the defen-

dants' duties and authority under the housing code.

The court finds that the defendants are entitled to the immunity given under Kan. Stat.Ann. § 75–6104(c) on all state law claims. All of the alleged improper conduct arose from the defendants' enforcement of the housing code.

■ The defendants also claim that they are entitled to immunity under Kan.Stat. Ann. § 75–6104(e). Subsection (e) provides immunity for

> any claim based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a governmental entity or employee, whether or not the discretion is abused and regardless of the level of discretion involved.

Kan.Stat.Ann. § 75–6104(e) (Supp.1998). There is no question that the defendants had a broad range of discretion in enforcing the housing code. However, the plaintiffs claim that by acting maliciously or in reckless or intentional violation of their duties the defendants lose the immunity granted under the KTCA.

The plaintiffs have produced no evidence, outside of their own personal feelings and beliefs, that the defendants acted in a malicious or reckless manner. In order to survive a motion for summary judgment, the plaintiffs must go beyond the pleadings and, by affidavits or depositions, answers to interrogatories, and admissions on file, designate specific facts showing there is a genuine issue for trial. *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548. The court finds that the plaintiffs have failed to do this.

If the plaintiffs were allowed to survive a motion for summary judgment based upon "discretionary function" immunity by simply stating that they felt the actions of the plaintiffs were malicious, the immunity would become worthless. Virtually every plaintiff would be able to make these allegations and survive summary judgment. Although the plaintiffs are not required to prove their case at this point in the proceedings, a showing of more than what the

plaintiffs feel and believe, without any supporting evidence, is required to survive a motion for summary judgment. Therefore, the court finds that the defendants are entitled to immunity under Kan.Stat. Ann. § 75–6104(e) on all claims brought under Kansas law as well.

Even though the court's findings afford the defendants immunity under the KTCA, the court will address the merits of the state law claims, as addressed by the defendants in their motion for summary judgment.

**B. Plaintiffs' Defamation Claim**

■ The plaintiffs have alleged that they were defamed by the defendants by the defendants portraying them in a false light. Although the motion for summary judgment and all of the briefs filed in connection with that motion, discuss this claim in the context of a defamation claim, it is clear that "false light" claims are actually invasion of privacy claims.

■ In *Rinsley v. Frydman*, 221 Kan. 297, 559 P.2d 334, Syl. ¶ 1 (1977), the Kansas Supreme Court stated that "[o]ne who gives to another publicity which places him before the public in a false light of a kind highly offensive to a reasonable man, is subject to liability to the other for invasion of his privacy." The elements that must be shown by a plaintiff to succeed under a claim of false light invasion of privacy include (1) publication of some kind must be made to a third party; (2) the publication must falsely represent the person; and (3) that representation must be highly offensive to a reasonable person. *Castleberry v. Boeing Co.*, 880 F.Supp. 1435, 1442 (D.Kan.1995).

■ The defendants claim that the plaintiffs cannot succeed on this claim because there is no evidence of any "publicity" of this matter or that any information was "false," as is required by Kansas law. In the Memorandum in Support of Defendants' motion for Summary Judgment (Doc. 59), uncontroverted fact No. 66

states: "There has not been any publicity about the matter." The Memorandum in Opposition to Defendants' Motion for Summary Judgment (Doc. 66) indicates that "Paragraph 66 is uncontroverted." This admission, in and of itself, is sufficient to establish that the plaintiffs cannot meet the requirements of Kansas law for a false light invasion of privacy claim. However, the court has reviewed all of the facts presented in this case found that the only possible "publicity" alleged by the plaintiffs is that other people saw the defendants entering the plaintiffs' property to talk to the plaintiffs and comments made by the mailman that he was sorry he had to keep giving the plaintiffs certified letters.

Kansas bases its invasion of privacy tort of false light publicity on the Restatement (Second) of Torts. *See Finlay v. Finlay,* 18 Kan.App.2d 479, 856 P.2d 183, 189 (1993) (citing Restatement (Second) of Torts when discussing invasion of privacy torts). According to the Restatement,

> "Publicity," . . . means that the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge.
>
> . . .
>
> Thus it is not an invasion of the right of privacy, within the rule stated in this Section, to communicate a fact concerning the plaintiff's private life to a single person or even to a small group of persons.

Restatement (Second) of Torts § 652D cmt. a (1977).[1] Using this definition of "publicity" it is clear that the plaintiffs' claim of invasion of privacy based upon false light publicity must fail. Even by taking every allegation made the plaintiffs as true, there is no evidence that any information was communicated to the public at large. The plaintiffs have identified only a handful of people who may have received this information. This is insufficient to support their claim and summary judgment is, therefore, appropriate on this claim.

## C. Plaintiffs' Tortious Interference With Contract Rights Claim

■ The plaintiffs contend that the defendants tortuously interfered with contracts they had to sell and rent the properties involved in this case. Kansas has long recognized that a party who, without justification, induces or causes a breach of contract will be answerable for damages caused by his actions. *Dickens v. Snodgrass, Dunlap & Co.,* 255 Kan. 164, 872 P.2d 252, 257 (1994) (citing *Turner v. Halliburton Co.,* 240 Kan. 1, 722 P.2d 1106. Syl. ¶ 7 (1986)). " 'The elements essential to recovery for tortious interference with a contract are: (1) the contract; (2) the wrongdoer's knowledge thereof; (3) his intentional procurement of its breach; (4) the absence of justification; and (5) damages resulting therefrom.' " *Id.* (quoting 45 Am.Jur.2d, *Interference* § 39).

The defendants contend that the plaintiffs cannot meet several of the elements of this cause of actions. First, the defendants claim that there were no contracts between the plaintiffs and any third parties. The plaintiffs contend that there were rental agreements that the defendants interfered with and a contract for sale which Shirley Green had with a buyer under a contract for deed arrangement. Not surprisingly, the plaintiffs fail to cite any reference to the record to support this claim. The court has reviewed the record and determined that rental contracts existed that satisfy the first element of this cause of action. The court has found no evidence showing that Shirley Green had a contract for the sale of one of her properties. Because the plaintiffs have provided no evidentiary support for this claim, the court finds that the only contracts that will be at issue are the rental agreements.

---

**1.** Although this comment is made under Section 652D, which pertains to Publicity given to Private Life, it is specifically made applicable to section 652E, which pertains to Publicity Placing Person in False Light, by Section 652E, comment a.

The defendants claim that even if contracts existed, there is no evidence that they intentionally caused the contracts to be breached. In their response, the plaintiffs do not address this issue at all. The record clearly shows that the only evidence that could be used to support the plaintiffs' claim is the personal beliefs of the plaintiffs. The plaintiffs were never told what the defendants said to the tenants that moved out, or why the tenants moved out. The plaintiffs base the entire claim on the fact that they think the tenants moved out because of the actions of the plaintiffs. They provide no evidence or statements from the former tenants, or anyone else, that shows the defendants' actions had anything to do with the tenants moving.

The plaintiffs have a burden of going beyond the pleadings and, by affidavits or depositions, answers to interrogatories, and admissions on file, designate specific facts showing there is a genuine issue for trial. *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548 (interpreting Fed.R.Civ.P. 56(e)). Their own personal beliefs, without any additional supporting evidence, are insufficient to meet this requirement and summary judgment is appropriate for that reason. The court's ruling on this issue makes a ruling on the remaining elements of absence of justification and damages unnecessary.

### D. Plaintiffs' Outrage Claim

The tort of outrage, or intentional infliction of emotional distress as it is sometimes called, is well recognized by the Kansas Courts. The rule for this tort was adopted from the Restatement (Second) of Torts § 46. Section 46 provides that "[o]ne who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to another results from it, for such bodily harm." *Roberts v. Saylor*, 230 Kan. 289, 637 P.2d 1175, 1179 (1981).

The Kansas Supreme Court has established two threshold requirements that must be met before a claim of outrage can proceed to a jury. These requirements were expressed by the Kansas Supreme Court in *Roberts v. Saylor* as follows:

> Liability for extreme emotional distress has two threshold requirements which must be met and which the court must, in the first instance, determine: (1) whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery; and (2) whether the emotional distress suffered by the plaintiff is in such extreme degree the law must intervene because the distress inflicted is so severe that no reasonable person should be expected to endure it.

*Id.*

The Kansas courts have addressed the issue of what conduct is, or is not, sufficiently outrageous to support a threshold finding that the issue of outrage should be given to a jury. The Kansas Supreme Court has held that the alleged conduct must be "atrocious and utterly intolerable in a civilized society." *Taiwo v. Vu*, 249 Kan. 585, 822 P.2d 1024, 1029 (1991). "Mere insults, indignities, threats, annoyances, petty expressions, or other trivialities" do not rise to the necessary level of outrageous conduct. *Lindemuth v. Goodyear Tire & Rubber Co.*, 19 Kan.App.2d 95, 864 P.2d 744, 749 (1993).

In *Taiwo*, the defendant, Kim Phan Hti Vu, had refused to give the plaintiff, Sherry Taiwo, her final paycheck; locked Mrs. Taiwo in the defendant's place of business; and called the police while Mrs. Taiwo was inside the business and falsely claimed that the co-plaintiff, Obafemi Taiwo, had broken the window out of the defendant's van. The defendant continued in the harassment by having another employee telephone the police the following day and report that she had seen Mr. Taiwo damaging the defendant's Cadillac, which was also untrue. Based on these facts, the court found that the threshold requirement had been met for a claim of outrage and

the jury awarded both compensatory and punitive damages against the defendant.

In *Gomez v. Hug,* 7 Kan.App.2d 603, 645 P.2d 916 (1982), the Kansas Court of Appeals reversed the trial court's order granting summary judgment to the defendant based on a claim of outrage. In *Gomez,* the plaintiff was a supervisor at the Shawnee County Fairgrounds. The defendant, a Shawnee County Commissioner, engaged in a fifteen minute tirade aimed at the defendant. The defendant repeatedly used extremely derogatory racial slurs and shook his fist at the defendant. Evidence was presented which showed that the plaintiff suffered severe emotional distress, which eventually led to his hospitalization for a period of nearly two weeks. *Id.* at 918. The Kansas Court of Appeals determined that the actions of the defendant were sufficiently outrageous to pass the threshold requirement of a claim for outrage. The court also determined that a reasonable jury could determine that his injuries were sufficient to support a claim for outrage. As a result, the Kansas Court of Appeals reversed the trial court's order granting summary judgment and remanded the case to the trial court for a determination on the merits.

Although the courts in *Taiwo* and *Gomez* found that the conduct complained of in each case was sufficiently outrageous to support the plaintiffs' claims for outrage, such findings are rare in Kansas. "The overwhelming majority of Kansas cases have held in favor of defendants on the outrage issue, finding that the alleged conduct was insufficiently outrageous' to support the cause of action." *Lindemuth,* 864 P.2d at 749. In *Roberts v. Saylor,* the defendant was a doctor who had performed surgery on the plaintiff which led to a medical malpractice claim. That claim was settled but obvious hard feelings existed between the two parties. When the plaintiff was in the preoperation room shortly before surgery for an unrelated problem, the defendant allegedly came into the room and repeatedly expressed his dislike for the plaintiff in a very rude and insulting manner. The Kansas Supreme Court held that based upon these facts the plaintiff had failed to meet the threshold showing for a claim of outrage. *Roberts,* 637 P.2d at 1180–81. As such, summary judgment was proper.

In *Burgess v. Perdue,* 239 Kan. 473, 721 P.2d 239 (1986), the plaintiff's son, who was a resident of the Kansas Neurological Institute (KNI), died while on his way to the hospital. When the plaintiff arrived at the hospital, she was informed of her son's death by Dr. Perdue and she indicated that she did not want an autopsy performed on the body. However, when informed of the facts of the case, the county coroner ordered an autopsy on the body. Dr. Perdue called to inform the plaintiff of the coroner's order, he again asked for her consent to the autopsy and informed her that KNI would want to examine her son's brain. At that point, she gave her consent for a partial autopsy but indicated that she did not want the autopsy to be performed on her son's brain. Dr. Perdue furnished the county coroner with a written authorization for the autopsy, but failed to indicate that the plaintiff had only consented to a partial autopsy. The assistant county coroner performed a complete autopsy. The brain was removed and sent to KNI for evaluation.

Three weeks after the plaintiff's son's funeral, the defendant, Dr. Heeb, discovered the son's brain in a jar at KNI. He called the plaintiff to tell her that he "had her son's brain in a jar." *Burgess,* 721 P.2d at 242. The plaintiff claimed that this conduct amounted to outrageous conduct sufficient to support a claim for outrage. The Kansas Supreme Court, affirming the trial court's order granting summary judgment in favor of the defendant, ruled that although the defendant could have used more tact in informing the plaintiff about the brain, the conduct was not extreme and outrageous.

Given the background as to how the Kansas courts have dealt with the threshold requirements for a claim of outrage, this court finds that summary judg-

ment is proper. The conduct alleged by the plaintiffs fails to meet the threshold requirement of being sufficiently extreme and outrageous so as to permit recovery. The plaintiffs complain of being given numerous housing code citations, having their rental property placarded, having their property entered into by the defendants without authorization, and being forced to appear in court numerous times on housing code violations. The court must assume, for the purposes of this motion, that all of these allegations are true. However, none of this conduct can be viewed as "atrocious and utterly intolerable in a civilized society" as is required under Kansas law. *See Taiwo,* 822 P.2d at 1029.

On page twenty-five of the Memorandum in Opposition to Summary Judgment, the plaintiffs state that if this conduct would not cause the average person to feel outrage, "then [the] plaintiffs feel sorry for what our society has become." The court finds this argument is neither persuasive nor appropriate. The role of the courts in this country is to interpret and apply the law to the facts of the case before it. The court has been unable to locate any legal authority which stands for the proposition that the societal concerns of the parties should be a determining factor in the outcome of any given case. Based upon the strict threshold requirements given to the outrage cause of action in Kansas, it is clear, regardless of how the plaintiffs feel about it, that the conduct of the defendants is insufficient to support a claim for outrage. Therefore, summary judgment is granted on this claim. The court's ruling that the plaintiffs cannot pass the first threshold requirement makes any discussion of the second requirement, severe emotional distress, unnecessary.

### E. Plaintiffs' Abuse of Legal Progress Claim

■ The defendants claim that they are entitled to summary judgment on the

plaintiffs' abuse of legal process claims which are based upon the prosecutions for the violations of the city's housing code. The elements of an abuse of process claim are:

1. There must have been an ulterior purpose in filing of an action or in use of whatever process was employed, and

2. The act was willful and improper in the regular prosecution proceeding.

*Lindenman v. Umscheid,* 255 Kan. 610, 875 P.2d 964 (1994).

■ The plaintiffs have alleged three different ulterior motives which they believe prompted the defendants' actions in this case. The plaintiffs have alleged that the defendants issued them citations under the housing code to harass them, to force them out of the rental business, and to raise revenue for the City of Wichita.

The defendants claim that there is no evidence in the record to support these claims of improper motive. The only evidence the plaintiffs have provided to support their claims of ulterior motives are their own beliefs of what the defendants' motives were. They point to no other evidence, whatsoever, to support these claims.

In the Memorandum in Opposition to Defendants' Motion for Summary Judgment (Doc. 66), the plaintiffs' entire argument on this claim is as follows:

Defendants['] arguments are not really worthy of any discussion here. Suffice it to say that a claim of abuse of legal process has been made out by the plaintiffs sufficient to withstand summary judgment.[2]

The plaintiffs apparently felt that the defendants' motion for summary judgment on this issue deserved no more attention than this flippant response. Unfortunately, the court finds that the motion for summary judgment on this claim has more

---

**2.** This response was filed nearly two months after the defendants' motion for summary judgment was filed, following two motions for

extensions of time which were granted by the court.

merit than the plaintiffs did. As noted above, once the movant makes a properly supported motion, the nonmovant must do more than merely show there is some metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The nonmovant must go beyond the pleadings and, by affidavits or depositions, answers to interrogatories, and admissions on file, designate specific facts showing there is a genuine issue for trial. *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548 (interpreting Fed. R.Civ.P. 56(e)). The plaintiffs' response clearly fails to demonstrate to the court that a genuine issue of material fact is present in regards to this claim. The plaintiffs' personal beliefs, without any supporting evidence whatsoever, are clearly insufficient to withstand a motion for summary judgment on this claim. Therefore, the defendants' motion for summary judgment is granted as it relates to the plaintiffs' abuse of legal process claim.

### F. Plaintiffs' Equal Protection Claim

■ The defendants claim that the plaintiffs are unable to adequately support their equal protection claim brought under 42 U.S.C. § 1983. The claim is apparently based upon a selective prosecution theory. In order to establish an equal protection claim for selective prosecution, the plaintiffs must show:

1. The person, compared with others similarly situated, was selectively treated, and
2. The selective treatment was motivated by an intention to discriminate on the basis of impermissible considerations, such as race or religion, to punish or inhibit the exercise of constitutional rights, or by a malicious or bad faith intent to injure the person.

*Bock Associates v. Chronister,* 951 F.Supp. 969, 977 (D.Kan.1996). When discrimination is not aimed at a "suspect class," as is the case here, the plaintiffs are required to show intentional or purposeful discrimination. *Id.* The failure to prosecute other offenders, in and of itself, is no basis for a finding of denial of equal protection. *Id.* The plaintiffs must show that the defendants acted with malicious or bad faith intent to injure the plaintiffs.

The court finds that the record clearly fails to establish that a genuine issue of material fact is present on this issue. The plaintiffs base this claim totally on their assumptions that others were not being issued citations for what they felt were more serious violations of the city's housing code. The plaintiffs have stated repeatedly that other homes in the areas surrounding their rental property had housing code violations. However, the plaintiffs have produced no evidence that the other home owners were not issued citations for the alleged housing violations. It is undisputed that there were numerous other individuals appearing before the court for violations of the housing code at the times the defendants were required to appear. The facts supplied by the plaintiffs simply fail to provide any evidence that they were being treated any differently than similarly situated individuals.

In addition to the plaintiffs' inability to demonstrate that they were treated differently than other, similarly situated individuals, they have also failed to show that there was any malicious or bad faith intent on the part of the defendants. As with the abuse of legal process claim, the only evidence that the plaintiffs have produced in support of their claim is their own personal beliefs that they were subject to selective prosecution in violation of their equal protection rights. This is clearly insufficient evidentiary support to survive a motion for summary judgment. For those reasons, summary judgment is granted in favor of the defendants on the plaintiffs' equal protection claim.

### G. Plaintiffs' Due Process Claims
#### 1. Substantive Due Process

■ The plaintiffs claim that their substantive due process rights have been violated because the defendants entered their

properties without their permission or probable cause. The defendants claim that, because the tenants had requested they come out and inspect the properties, they had the right to enter the plaintiffs' properties on several occasions. The defendants also claim that the inspection laws are designed to protect the public against fraud and injury and to promote the public health, safety and welfare. According to the defendants, because the inspections are rationally related to the City's interest in public safety and welfare, the laws are not unconstitutional either as written or as applied.

The defendants' response, at page 27, sets forth their argument as follows:

> Defendants attempt to do plaintiffs a grave injustice by wrongfully arguing that plaintiffs' claim of unconstitutionality stems from their belief that the City should not have a code for maintenance of properties. That is simply not the issue.
>
> The issue is has their fundamental rights been abridged. There is little question but that the city inspectors should not be able to do what even law enforcement officers can't do on something less than probable cause.

From a review of this response, the only argument it appears the plaintiffs are asserting in support of their substantive due process claim is that the defendants should be required to have probable cause, similar to that of a police officer in a criminal case, before being allowed to enter the plaintiffs' properties for inspections.

This issue has been clearly decided against the plaintiffs' position by the United States Supreme Court. *See Camara v. Municipal Court,* 387 U.S. 523, 537, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967). In *Camara,* the Court stated:

> Time and experience have forcefully taught that the power to inspect dwelling places, either as a matter of systematic area-by-area search or, as here, to treat a specific problem, is of indispensable importance to the maintenance of community health; a power that would

be greatly hobbled by the blanket requirement of the safeguards necessary for a search of evidence of criminal acts. *Id.* As this is the only legal argument brought before the court by the plaintiffs in their response to the defendants' motion for summary judgment, and no factual assertions are made in regard to this claim, the court finds that the plaintiffs have not demonstrated to the court that there is any legal or factual basis to support this claim. Therefore, summary judgment is granted in favor of the defendants on the plaintiffs' substantive due process claim.

### 2. Procedural Due Process

 The plaintiffs also contend that the defendants violated their procedural due process guaranteed under the Fourteenth Amendment. Due process requires that one be given notice of the charges against him a reasonable time before the hearing is to take place. *Miller v. City of Mission, Kansas,* 705 F.2d 368, 372 (10th Cir.1983). The defendants contend that the plaintiffs were given the opportunity to have their cases reviewed informally by Office of Central Inspection. In addition, the plaintiffs were allowed to have their cases tried both at the municipal court level and the state district court level. The defendants contend that the plaintiffs were given sufficient notice of these trials to allow them to properly prepare.

The plaintiffs' Memorandum in Opposition to Defendants' Motion for Summary Judgment (Doc. 66) does not contest these statements. In fact, the plaintiffs' entire argument on this matter is as follows:

> Fundamental due process requires at the very least that a party be given notice of the charges against him a reasonable time before the hearing is to take place. *Staton v. Mayes,* 552 F.2d 908, 912 (10th Cir[.]), *cert. denied,* 434 U.S. 907, 98 S.Ct. [sic] 309, 54 L.Ed.2d [sic] 195 (1977)[.] This was not done in several instances regarding Anna Davis.

As an initial note, it appears as though the only plaintiff who is involved in this com-

plaint is Anna Davis. The plaintiffs' brief fails to make any argument whatsoever that the other plaintiffs' procedural due process rights have been violated. Therefore, the court will focus its attention on the claim of Anna Davis.

The plaintiffs' brief claims that Anna Davis was not given notice of the charges against her a "reasonable amount of time before the hearing" "in several instances." However, the plaintiffs' brief fails to point out one such instance. The court has reviewed the record in this case and determined that the only possible instances Anna Davis may be complaining of were times where she was issued a citation for housing code violations without first being given an opportunity to correct the violations.

▆▆▆ The Fourteenth Amendment guarantees individuals the right to a fair hearing of their case and appropriate time to prepare for the hearing before they are deprived of life, liberty or property. The court has been unable to locate any legal authority that extends the Fourteenth Amendment's coverage to provide people the right to remedy violations of the law before they are charged with the violations. The housing code violations were violations of the law at the time they were committed, not at some point down the line after the plaintiffs were warned to fix the problems and failed to do so. The issuance of citations without providing a person time to cure the violations of the housing code is not barred by the due process clause of the Fourteenth Amendment.

The plaintiffs have failed to show any material facts that could be used to support their claims that the defendants violated their procedural due process rights. Due to the fact that the plaintiffs' memorandum in opposition to the motion for summary judgment contained little, if any, legal arguments or factual basis to support this claim, the court has reviewed the law and the facts of this case on its own and found no basis for this claim to proceed. Therefore, summary judgment is granted on the plaintiffs' procedural due process claim.

## H. Plaintiffs' Unconstitutional Taking Claim

The plaintiffs final claim is that the actions of the defendants constituted an unconstitutional "taking" of their property without compensation in violation of the Fifth Amendment. As was so eloquently stated by the Kansas Supreme Court in the *Dickens* opinion, "[t]he uncontroverted facts herein fall so far short, in so many respects, of supporting a cause of action based upon [an unconstitutional taking] that it makes meaningful discussion of the issue difficult." *Dickens*, 872 P.2d at 257.

▆▆▆ The Fifth Amendment, as applied to the states through the Fourteenth Amendment, prohibits states from taking private property for public use without just compensation. U.S. Const. amends. V, XIV. Such takings are allowed, however, when a state is exercising its inherent police powers to promote "the health, morals or safety of the community." *Keystone Bituminous Coal Ass'n v. DeBenedictis*, 480 U.S. 470, 489, 107 S.Ct. 1232, 94 L.Ed.2d 472 (1987).

▆▆▆ The first issue to be decided by the court is whether there has even been a taking. The plaintiffs' claim, as near as the court can tell, is that the defendants' actions in issuing citations and placarding the property caused a reduction in the value of the plaintiffs' properties. The court fails to see how this amounts to a taking that would be prohibited by the Fifth Amendment. The actions of the defendants would only be considered a taking "if the ordinance does not substantially advance legitimate state interests ... or denies an owner economically viable use of his land." *United States v. Riverside Bayview Homes, Inc.*, 474 U.S. 121, 127, 106 S.Ct. 455, 88 L.Ed.2d 419 (1985).

The defendants make several arguments as to why no taking has occurred in this case. First, the defendants contend that

the plaintiffs have not been deprived of the economic use of their property. According to the defendants, the plaintiffs' properties may have been reduced in value, but that such reduction is not sufficient to amount to a taking. The defendants also claim that the enforcement of the housing code advances a legitimate state interest in protecting the health, welfare and safety of the residents.

Once again, the plaintiffs' Memorandum in Opposition to the Motion for Summary Judgment makes broad statements denying the defendants' allegations without providing any facts or citations to the record to support them. The memorandum states:

> We are not talking about just the ordinance, but the improper application of the ordinance by the city inspectors. The actions of defendants go beyond the proper exercise of police powers. This is the issue. Defendants would like to argue that plaintiffs were merely frustrated in their use of their property, but what plaintiffs are alleging is more than mere frustration; it is appropriation.

While the plaintiffs' memorandum clearly outlines their claims in this case, it fails to provide any evidentiary support for those claims. While this response may have been sufficient to withstand a motion to dismiss for failure to state a cause of action under Rule 12(b)(6), it is insufficient to withstand a motion for summary judgment under Rule 56. As has been stated previously by this court, the plaintiffs must go beyond the pleadings and, by affidavits or depositions, answers to interrogatories, and admissions on file, designate specific facts showing there is a genuine issue for trial. *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548. This has not been done and summary judgment is, therefore, granted on the plaintiffs' taking claim as well. Because the court has found that no taking has occurred, it is unnecessary to determine whether the defendants' actions were a proper exercise of the state's inherent police powers.

## I. Dismissal of Defendants Stalkup, Kilbourn, and Irvin in Their Individual Capacities

The defendants have moved the court to dismiss defendants Stalkup, Kilbourn and Irvin in their individual capacities because they are duplicitous and unnecessary. The court's findings that summary judgment is proper on all claims renders this issue moot. Therefore, the court will not address this issue.

## J. Qualified Immunity of the Individual Defendants

The individual defendants in this action, Stalkup, Kilbourn and Irvin, claim that they are entitled to qualified immunity. The court's findings that summary judgment is proper on all claims renders this issue moot. Therefore, the court will not address this issue.

## K. Plaintiffs' § 1985 Claim and Sherman Anti–Trust Claim

The plaintiffs stated at the Pre–Trial Conference that they were withdrawing these two remaining claims. Therefore, the court will consider these two claims as having been withdrawn and no longer part of the plaintiffs' claims against the defendants.

## IV. CONCLUSION

The court finds that summary judgment is appropriate on all of the plaintiffs' remaining claims. As stated above, the plaintiffs have withdrawn their claims brought under 42 U.S.C. § 1935 and the Sherman Act. The plaintiffs' Memorandum in Opposition to Defendants' Motion for Summary Judgment (Doc. 66) is filled with general allegations and trivial responses to the defendants' motion for summary judgment but fails to bring forth any evidence to support the plaintiffs' claims as is required under Fed.R.Civ.P. 56. The court finds that the KTCA affords the defendants immunity on all of the claims brought under Kansas law. In addition, the court finds that summary judgment is

appropriate on all of the claims, including the claims brought under Kansas law, because the plaintiffs have failed to show that there is any genuine issue of material fact which would preclude summary judgment.

**IT IS THEREFORE BY THIS COURT ORDERED** that the Defendants' Motion for Summary Judgment (Doc. 58) is granted.