Sandra Folse WATSON,
et al., Plaintiffs,

v.

CITY OF KANSAS CITY, KANSAS,
et al., Defendants.

No. CIV. 99–2106–CM.

United States District Court,
D. Kansas.

Nov. 21, 2001.

Mark K. Birmingham, Kansas City, KS, for Plaintiffs.

Douglas M. Greenwald, Daniel B. Denk, Gregory P. Cohen, McAnany, Van Cleave & Phillips, P.A., Kansas City, KS, for Defendants.

## MEMORANDUM AND ORDER

MURGUIA, District Judge.

Pending before the court are defendants' motion for partial dismissal of modified second amended petition for damages for failure to state a claim (Doc. 117), defendants' motion for partial summary judgment (Doc. 105), and plaintiffs' brief in response to the order of the court of October 30, 2000 (Doc. 123). As set forth below, defendants' motion for partial dismissal (Doc. 117) is granted in part, defendants' motion for partial summary judg-

ment (Doc. 105) is denied, and plaintiffs' brief in response (Doc. 123) is moot.

● **Background**

This case was removed from Wyandotte County District Court to this court in March 1999. Plaintiffs allege that defendants' action in enforcing housing code provisions by seeking to enter and inspect residential properties either owned or occupied by plaintiffs violated plaintiffs' federal and state constitutional rights, as well as various state tort laws.

On November 8, 1999, this court issued an order dismissing several of the defendants from the case indicating plaintiffs failed to state a claim against them. Further, the court's order dismissed several of plaintiffs' federal constitutional causes of action for failure to state a claim and for failure to meet the heightened pleading standard necessary based upon defendants' assertion of qualified immunity. In its order, however, the court allowed plaintiffs to submit a motion for leave to amend their complaint. Subsequently, plaintiffs filed a motion for leave to amend the complaint, which the court granted on February 2, 2000, allowing plaintiffs to more specifically plead all previously pled causes of action. The amended complaint included the previously dismissed claims and defendants. Subsequently, defendants filed a motion for partial summary judgment (Doc. 105), seeking to dismiss all claims raised in plaintiffs' modified second amended petition for damages. Due to deficiencies in the parties' papers, the court took defendants' motion for partial summary judgment under advisement, pending proper briefing. In its order dated October 30, 2000 (Doc. 113), the court allowed defendants the option of filing an alternate motion, if such motion would more properly address the relief requested by defendants. Further, the court ordered that if no new papers were received

by the court, the pending summary judgment motion would be denied. Subsequently, defendants filed an alternate submission by submitting their motion for partial dismissal (Doc. 117) of claims raised in plaintiffs' modified second amended petition for damages. No new briefing on the defendants' motion for partial summary judgment was submitted. Accordingly, the court now considers defendants' motion for partial dismissal (Doc. 117). Defendants' motion for partial summary judgment (Doc. 105) is denied.

In addition, in its October 30, 2000 order, the court ordered the parties to submit briefing on whether the previously dismissed defendants are properly included in the action and on whether the claims previously dismissed by orders of the court (including federal and constitutional claims) remain viable causes of action. Subsequently, plaintiffs filed plaintiffs' brief in response to the order of the court of October 30, 2000 (Doc. 123). In light of its rulings on defendants' summary judgment motion, and the motion to dismiss filed by defendants, the court now considers plaintiffs' submission moot.

● **Motion to Dismiss Standard**

The court will dismiss a cause of action for failure to state a claim only when it appears beyond a doubt that the plaintiff can prove no set of facts in support of the theory of recovery that would entitle him or her to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Maher v. Durango Metals, Inc.*, 144 F.3d 1302, 1304 (10th Cir.1998), or when an issue of law is dispositive. *Neitzke v. Williams*, 490 U.S. 319, 326, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). The court accepts as true all well-pleaded facts, as distinguished from conclusory allegations, *Maher*, 144 F.3d at 1304, and all reasonable inferences from those facts are viewed in favor of the plaintiff. *Witt v. Roadway Express*, 136 F.3d 1424, 1428

(10th Cir.1998). The issue in resolving a motion such as this is not whether the plaintiff will ultimately prevail, but whether he or she is entitled to offer evidence to support the claims. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), overruled on other grounds, *Davis v. Scherer*, 468 U.S. 183, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984).

In their motion for partial dismissal, defendants seek the court to dismiss Counts 1, 3, 4, 5, 7, 8, 9, 11, 12, 13, 14, 15, 16, 17, 18, 20, 21, 22, 23, 24, 25, 26, 27, and 28 of plaintiffs' modified second amended petition (hereinafter "complaint"). In addition, defendants seek to dismiss any claim for punitive damages against the municipal defendant. As the facts as alleged by plaintiffs have been set forth in substantial part in this court's November 8, 1999 order (Doc. 61), the facts will not be repeated here, but will be referenced where relevant to the court's analysis.

● **Dismissal of Constitutional Claims on Qualified Immunity Grounds**

The individual defendants seek the court to dismiss plaintiffs' 42 U.S.C. § 1983 constitutional claims raised in counts 3, 7, 11, 15, and 20 of plaintiffs' complaint by asserting entitlement to qualified immunity from these claims. In count 3, plaintiffs allege defendants violated the Fourth Amendment by executing a warrantless search on July 10, 1997. In count 7, plaintiffs allege defendants violated the Fourth Amendment by executing a warrantless search on July 11, 1997. In count 11, plaintiffs allege defendants violated the Fourth Amendment while conducting a warranted search on July 11, 1997. In count 20, plaintiffs allege defendants violated the Fourth Amendment while conducting a warranted search on October 9, 1997. Finally, in count 15, plaintiffs allege defendants violated the First Amendment by engaging in retaliatory actions. In

their motion, defendants assert that the individual defendants are entitled to qualified immunity from personal liability under § 1983 as to these constitutional claims. As set forth below, the court grants defendants' motion in part.

### • Qualified Immunity

Qualified immunity protects state actors from liability when acting within the scope of their employment. "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Qualified immunity provides government officials immunity from suit as well as from liability for their discretionary acts. *Mitchell v. Forsyth*, 472 U.S. 511, 526–27, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985); *Pueblo Neighborhood Health Ctrs., Inc. v. Losavio*, 847 F.2d 642, 644 (10th Cir.1988). The doctrine of qualified immunity serves the goals of protecting public officials "who are required to exercise their discretion and the related public interest in encouraging the vigorous exercise of official authority." *Butz v. Economou*, 438 U.S. 478, 506, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978).

"Where a qualified immunity defense is asserted in a 12(b)(6) motion . . . we apply a heightened pleading standard, requiring the complaint to contain 'specific, non-conclusory allegations of fact sufficient to allow the district court to determine that those facts, if proved, demonstrate that the actions taken were not objectively reasonable in light of clearly established law.'" *Dill v. City of Edmond*, 155 F.3d 1193, 1204 (10th Cir.1998) (quoting *Breidenbach v. Bolish*, 126 F.3d 1288, 1293 (10th Cir. 1997)). Here, plaintiffs have amended their complaint in an attempt to meet this heightened pleading standard.

Qualified immunity spares defendants the burden of proceeding with the litigation unless plaintiffs can show that defendants violated "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow*, 457 U.S. at 818, 102 S.Ct. 2727. Therefore, to defeat defendants' claim of qualified immunity, plaintiffs must "come forward with facts or allegations sufficient to show both that the defendant's alleged conduct violated the law and that that law was clearly established when the alleged violation occurred." *Pueblo Neighborhood Health Ctrs.*, 847 F.2d at 646. Plaintiff "must do more than identify in the abstract a clearly established right and allege that the defendant has violated it." *Id.* at 645. Plaintiff must "articulate the clearly established constitutional right and the defendant's conduct which violated the right with specificity." *Albright v. Rodriguez*, 51 F.3d 1531, 1535 (10th Cir.1995) (quotation omitted); see also *Walter v. Morton*, 33 F.3d 1240, 1242 (10th Cir.19947) (plaintiff has burden to show with particularity facts and law establishing inference that defendants violated constitutional right).

Ordinarily, in order for plaintiff to demonstrate that a law is clearly established, "there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Medina v. City and County of Denver*, 960 F.2d 1493, 1498 (10th Cir.1992); see also *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987) (a right is clearly established if the contours of the right are "sufficiently clear [so] that a reasonable official would understand that what he is doing violates that right").

The Supreme Court has established a two-part approach to determine if qualified immunity applies. "[T]he better approach

to resolving cases in which the defense of qualified immunity is raised is to determine first whether the plaintiff has alleged a deprivation of a constitutional right at all. Normally, it is only then that a court should ask whether the right allegedly implicated was clearly established at the time of the events in question." *Tonkovich v. Kan. Bd. of Regents,* 159 F.3d 504, 516 (10th Cir.1998) (citing *County of Sacramento v. Lewis,* 523 U.S. 833, 842 n. 5, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998)). That is, only where the complaint alleges a valid claim must the court determine whether the constitutional right was clearly established so that reasonable officials would have understood that their conduct violated that right. *Albright v. Rodriguez,* 51 F.3d 1531, 1534–35 (10th Cir.1995). Thus, the court follows this two-step test to analyze the issue of qualified immunity raised by defendants here. *Butler v. City of Prairie Vill., Kan.,* 172 F.3d 736, 745 (10th Cir.1999).

## A. Fourth Amendment Claims Based on Warrantless Searches on July 10 and 11, 1997 (Counts 3 and 7)

### • Plaintiff's Allegations

Plaintiffs allege that defendants conducted unreasonable warrantless searches on July 10 and 11, 1997. Specifically, plaintiffs allege that during the first search on July 10, defendants entered the outside of plaintiffs' properties without consent, probable cause, or exigent circumstances. Plaintiffs had marked the properties with "no trespassing" signs.

In addition, plaintiff Watson alleges that on July 11, she observed a party of 7 to 10 uniformed officers, agents, employees, or staff of various Kansas City, Kansas departments searching the back yard and curtilage of her own and her residential and non-residential tenants' properties. Plaintiff Watson alleges that at the properties she was greeted by a camcorder shoved in her face by defendant Gonzalas, a Kansas City, Kansas Code Enforcement employee, while defendant Rust, acting fire marshal for Kansas City, Kansas, demanded entry for 6 to 10 municipal employees to look at the door locks in both the residential address of 1211–1217 Central and the non-residential commercial spaces at 1219–1221 Central Avenue. Plaintiff states defendant Ohler, Director of the Neighborhood Resource Center for Kansas City, Kansas, alleged that he desired entry because there were loose bricks on the front of the building. Plaintiff Watson refused entry and informed the party, including defendants Ohler, Rust, Gonzalas, Ward, and others that she would have to speak to her lawyer before discussing anything further.

Plaintiffs complain of defendants' intrusion into the "back yard area" of the Central properties. Plaintiffs utilize this area by sitting on lawn furniture in the evenings, cooking out, visiting, keeping their personal pets, boats and other personal properly. Plaintiffs allege this area is not open to the public, and that the area is not directly accessible from any street. The only street entrance is located on the south of the lot at 1209 Central, which is posted with "no trespassing" signs. To access the area a person must: (1) go through private property on the west; or (2) open private gates and climb a fence to enter, or cross a vacant lot on the east. The back yard area is "relatively secluded" from view of public streets.

Plaintiffs allege that on July 11, defendants entered this back yard area, climbed the steps to the rear entrance of 1215 Central and climbed the steps to the basements below 1211–1213 Central in an attempt to gain entry to these secure areas. In addition, plaintiffs allege that on July 11 defendants attempted to peer into bedroom windows on the north side of the

housing complex and attempted to open doors to the basement of 1221 Central, on the west side.

Plaintiffs Steve and Christine Perry allege that on July 11, defendants opened a gate to their private property at 1220 Ridge Avenue in Kansas City, Kansas, entered their private property, invaded their tomato garden, and videotaped their home and garden. Plaintiffs Steve and Christine Perry's property was posted with "no trespassing" signs. Plaintiff Steve Perry had informed defendant Ohler and other defendants on July 10, 1997 that they did not have permission to be on the property without the owners' consent.

• **Analysis**

To survive defendants' allegation of qualified immunity, plaintiffs must "come forward with facts or allegations sufficient to show both that the defendant's alleged conduct violated the law and that that law was clearly established when the alleged violation occurred." *Pueblo Neighborhood Health Ctrs.*, 847 F.2d at 646.

The Fourth Amendment protects curtilage from warrantless searches. However, "what comprises curtilage is a question of fact." *United States v. Swepston*, 987 F.2d 1510, 1513 (10th Cir.1993). "To determine whether an area falls within the home's curtilage, we consider four factors: (1) the proximity of the area to the home; (2) inclusion of the area within an enclosure surrounding the home; (3) the nature of the uses of the area; and (4) steps taken by the resident to protect the area from observation by persons passing by." *United States v. Long*, 176 F.3d 1304, 1308 (10th Cir.1999).

## B. July 11 Warrantless Search of Plaintiffs Steve and Christine Perry's Property (Count 7)

As set forth in its order of November 8, 1999 (Doc. 61), the court again finds plaintiffs Steve and Christine Perry have alleged a constitutional violation of their Fourth Amendment rights as to the July 11 warrantless search and finds that plaintiffs' Fourth Amendment rights in this context were clearly established. That is, as explained in its November 8, 1999 order, the court finds defendants knew or should have known that they were entering the curtilage of plaintiffs Steve and Christine Perry's property without a warrant. See *United States v. Dunn*, 480 U.S. 294, 300–01, 107 S.Ct. 1134, 94 L.Ed.2d 326 (1987) (setting forth relevant factors used to determine whether a plaintiff has reasonable expectation of privacy in areas searched).

As explained in its prior order, Tenth Circuit and Kansas cases focus on the proximity of the area to the house and especially on whether the area was enclosed. See *Swepston*, 987 F.2d at 1514 (chicken shed inside fence and close to house within curtilage); *United States v. Carra*, 604 F.2d 1271, 1273 (10th Cir.1979) (garden within fence considered curtilage); *State v. Waldschmidt*, 12 Kan.App.2d 284, 290, 740 P.2d 617, 622 (1987) (fenced yard considered curtilage); *State v. Mitchell*, 8 Kan.App.2d 265, 268, 655 P.2d 140, 142–43 (1982) (enclosed area requiring access through gate considered curtilage).

Accordingly, the court finds plaintiffs Steve and Christine Perry have met the heightened pleading standard as to the July 11 search.[1] Therefore, the court denies defendants' motion to dismiss Count 7

---

1. The court again recognizes that plaintiff Watson owned the property which plaintiffs Steve and Christine Perry occupied, but Watson again failed to establish that she had a reasonable expectation of privacy in the property, in light of the plaintiffs' allegations that suggest Steve and Christine Perry were the only residents of their property.

of plaintiffs' complaint as it relates to Steve and Christine Perry.

● **July 11 Warrantless Search of All Other Plaintiffs' Properties (Count 7)**

■ Plaintiffs have sufficiently pled facts to state a Fourth Amendment claim regarding the July 11 warrantless searches. Plaintiffs have alleged facts showing the close proximity of the area allegedly searched by defendants to the properties occupied by the plaintiffs. In addition, plaintiffs have alleged that the back yard areas are not directly accessible from the street, nor is this area in full view from any public street. In addition, plaintiffs allege that they utilize this area by sitting on lawn furniture in the evenings, cooking out, visiting, keeping their personal pets, boats and other personal property in the area. Further, plaintiffs allege they have the area posted with "no trespassing" signs and that plaintiff Watson verbally refused the defendants entry to the area and informed them that she would need to consult with her lawyer before engaging in further discussion about a search. Viewing all reasonable inferences from the facts in favor of plaintiffs, the court finds upon application of the four curtilage factors in Long, that plaintiffs have stated sufficient facts to establish that defendants invaded the curtilage of the rental properties at issue. See *Long*, 176 F.3d at 1308. Despite the more specific pleading, however, plaintiffs' complaint still does not meet the heightened pleading standard. Plaintiffs' complaint fails to show that the constitutional rights the defendants allegedly violated were clearly established at the time of the July 11 search. *Davis v. Scherer*, 468 U.S. 183, 197, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984). As noted in its November 8 order, given the multi-resident nature of the properties at issue, plaintiffs generally have less of an expectation of privacy in common areas. See *United States v. Ludwig*, 10 F.3d 1523, 1526 (10th Cir.1993) (no reasonable expectation of pri-

vacy in motel parking lot); *State v. Berry*, 223 Kan. 102, 106, 573 P.2d 584, 587 (1977) (motel resident had no reasonable expectation of privacy in area surrounding motel).

What constitutes curtilage in the vicinity of rental properties is a gray area, making it difficult for plaintiffs to establish that defendants knew or should have known that their entry onto the properties violated the Fourth Amendment. Plaintiffs have cited no case law to the court indicating that the defendants' search of the back yard areas of the rental properties was unlawful and that such unlawfulness was apparent at the time of the search. See *Anderson*, 483 U.S. at 640, 107 S.Ct. 3034 ("in light of the pre-existing law the unlawfulness must be apparent"). Therefore, even though plaintiffs have alleged sufficient facts to show that defendants invaded the curtilage of the properties at issue, plaintiffs have failed to meet the second part of the "heavy two-part burden" regarding qualified immunity. *Albright*, 51 F.3d at 1534. Accordingly, the court finds the individual defendants are entitled to qualified immunity on plaintiffs' Fourth Amendment claims regarding the July 11 search (Count 7).

● **July 10 Warrantless Search (Count 3)**

Even if the court were to assume that plaintiffs have made allegations sufficient to state a claim as to the allegedly unlawful July 10 warrantless search, the court finds plaintiffs do not meet the heightened pleading standard. Similar to the court's analysis regarding the July 11 warrantless search, the court finds plaintiffs' complaint fails to show that the constitutional rights the defendants allegedly violated were clearly established at the time of the July 10 search. *Davis v. Scherer*, 468 U.S. 183, 197, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984). Again, as noted in its November 8 order, given the multi-resident nature of the

properties at issue, plaintiffs generally have less of an expectation of privacy in common areas. See *Ludwig*, 10 F.3d at 1526 (no reasonable expectation of privacy in motel parking lot); *Berry*, 223 Kan. at 106, 573 P.2d at 587 (motel resident had no reasonable expectation of privacy in area surrounding motel).

Accordingly, the court finds the individual defendants are entitled to qualified immunity on plaintiffs' Fourth Amendment claims regarding the July 10 warrantless search (Count 3).

## C. Fourth Amendment Claims Based on Warranted Searches on July 11, 1997 and October 9, 1997 (Counts 11 and 20)

■ Defendants have raised no new arguments directed towards counts 11 and 20. Therefore, as set forth in its order of November 8, 1999 and viewing the fortified allegations of plaintiffs' complaint in a light most favorable to plaintiffs, the court again finds plaintiffs have sufficiently alleged Fourth Amendment violations concerning the warranted searches on July 11 and October 9 and they have shown their Fourth Amendment rights were clearly established when defendants obtained the allegedly invalid warrants and conducted the allegedly unreasonable searches. Accordingly, defendants are not entitled to qualified immunity on plaintiffs' Fourth Amendment claims related to the July 11 and October 9 warranted searches. Defendants' motion to dismiss Counts 11 and 20 on the grounds of qualified immunity is denied.[2]

## ● First Amendment Retaliation Claim (Count 20)

■ Plaintiffs allege defendants violated their First Amendment rights by "retaliat[ing] for plaintiff Watson's exercise of her right to protected expression." Plaintiffs allege defendants' actions were "part of a conspiracy to close plaintiff Watsons' property in retaliation for her outspoken political views and for the recourse that she took to the courts." Plaintiffs appear to allege that defendants' action in searching the properties at issue were retaliatory in violation of the First Amendment. Specifically, plaintiffs allege that defendants actions were in retaliation: (1) for plaintiff Watson's withdrawal of support for defendant Marinovich's run for Mayor of Kansas City, Kansas due to a difference in views about code enforcement and rental housing; (2) for Watson's activity in the community of representing landlords' interests by her service on community service boards and housing boards; (3) for Watson's involvement in court cases relating to code enforcement, building inspections, and licensing of rental housing; and (4) for Watson's actions in holding public forums opposing rental licensing.

The individual defendants seek to dismiss plaintiffs' First Amendment claim, asserting they are entitled to qualified immunity on this claim. Even if the court assumes plaintiffs have sufficiently alleged a violation of a constitutional right, the court finds plaintiffs have failed to meet their burden to show the law at issue was clearly established. See *Lutz v. Weld*

2. The court notes that, in their response, plaintiffs have asked the court for affirmative relief as to Counts 11 and 20 under the doctrine of collateral estoppel. Plaintiffs ask the court to find that a Kansas Court of Appeals decision addressing the constitutionality of the July 11 and October 9 search warrants at issue in this litigation precludes litigation of the constitutionality of the search warrants in

this case. The court finds it unnecessary to reach this issue, as it has denied defendants' motion for qualified immunity on Counts 11 and 20 on other grounds. However, where plaintiffs wish to raise the issue of collateral estoppel in a separate motion prior to trial, such submission will be allowed. The issue of collateral estoppel should include application of doctrine to facts of this case.

*County Sch. Dist.*, 784 F.2d 340, 342–43 (10th Cir.1986) (plaintiff carries burden of convincing the court that the law was clearly established).

The court finds that the appropriate statement of the issue in the context of the allegations of this complaint is whether a reasonable city official would have known at the time of the searches at issue that searches conducted following plaintiff Watson's public statements about housing issues, her withdrawal of support from defendant Marinovich's political candidacy, and her filing of lawsuits relating to housing issues would violate the plaintiffs' right of access to the courts.

Plaintiffs allege that their right of access to the courts is recognized and protected by the First Amendment. In support of this argument, plaintiffs cite *Crawford–El v. Britton*, 523 U.S. 574, 118 S.Ct. 1584, 140 L.Ed.2d 759 (1998). Although, in Crawford, the Supreme Court peripherally referenced that the Crawford–El plaintiff's constitutional right of access to the courts was well established, it did not elaborate on this issue, nor did the Crawford Court examine whether such right was well established in the context presented to the court here. Instead, the Crawford Court examined whether a plaintiff bringing a constitutional action against a government official, for which the official's improper motive is a necessary element, needed to present clear and convincing evidence of improper motive in order to defeat the official's motion for summary judgment.

Plaintiffs also cite the Fifth Circuit case of *Hale v. Townley*, 19 F.3d 1068 (5th Cir.1994) in support of their position. In Hale, the Fifth Circuit found defendant police officers were entitled to qualified immunity because the at the time the lawsuit was initiated, the plaintiff's right of access to the courts did not extend to the allegations raised by plaintiff that state officials retaliated against him for filing

and winning a lawsuit. Even if this case supported the plaintiffs' contention, the court notes that a single case from another circuit is not sufficient to clearly establish the law in the Tenth Circuit. *Woodward v. City of Worland*, 977 F.2d 1392, 1397 (10th Cir.1992); *Medina*, 960 F.2d at 1498.

Neither of the cases cited by plaintiffs support their contention that the defendants should have been on notice that their actions in searching the plaintiffs' properties following plaintiff Watson's public statements about housing issues, her withdrawal of support from defendant Marinovich's political candidacy, and her filing of lawsuits relating to housing issues, were unlawful. The Tenth Circuit has stated that in order for a right to have been clearly established, "some, but not necessarily precise, factual correspondence" between cases predating the alleged violation and the facts of the case in question is required. *Calhoun v. Gaines*, 982 F.2d 1470, 1474–75 (10th Cir.1992). "In essence, this standard requires officials to know well developed legal principles and to relate and apply them to analogous factual situations." *Id.*

Plaintiff has failed to cite a Supreme Court or Tenth Circuit case, or to establish by the weight of authority from other courts, that the alleged retaliation by defendants was clearly unlawful at the time it occurred. See *Medina*, 960 F.2d at 1498 (to demonstrate law is clearly established "there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains"). In light of plaintiffs' failure to show the law was clearly established, the court finds plaintiffs have failed to meet their burden. Accordingly, the court finds the individual defendants are entitled to qualified immunity from plaintiffs' First Amendment claims.

Therefore, Count 15 of plaintiffs' complaint is dismissed as to the individual defendants.

### D. Summary

■ Accordingly, Count 3 is dismissed as to all defendants, Count 2 is dismissed as to all defendants, Count 7 remains as to plaintiffs Steve and Christine Perry's claims but is dismissed as to all other individual defendants, Count 11 remains, Count 20 remains, and Count 15 is dismissed as to the individual defendants.

### ● Dismissal of State Law Claims on Immunity Grounds (Individual and Municipal Defendants) (Counts 1, 4, 5, 8, 9, 12, 13, 14, 16, 17, 18, 21, 22, 23, 25, 26, 27, and 28)

Defendants, both the individual defendants and the municipal defendant, seek the court to dismiss plaintiffs' state law claims by asserting they are entitled to qualified immunity from these claims pursuant to the discretionary function provision of the Kansas Tort Claims Act (KTCA), Kan. Stat. Ann. § 75–6104(e). Plaintiffs bring state law claims for trespass, intentional infliction of emotional distress, outrage, civil conspiracy, invasion of privacy by false light, tortious interference with existing contractual relations, tortious interference with prospective business advantage, physical intrusion upon the seclusion, false light, false arrest, and abuse of process.[3]

Defendants contend that plaintiffs' Kansas state law claims should be barred because the KTCA provides defendants immunity for the alleged improper actions. Specifically, defendants claim the KTCA shields defendants from liability on plaintiffs' state law claims arising from the defendants' enforcement of a housing code.

The KTCA makes governmental entities and their employees liable for a "negligent or wrongful act or omission." Kan. Stat. Ann. § 75–6103(a). The KTCA includes various exceptions to liability, but immunity is the exception and liability is the rule. *Fettke v. City of Wichita*, 264 Kan. 629, 633, 957 P.2d 409, 412 (1998).

The court finds defendants are not entitled to immunity under the exceptions contained in the KTCA. Plaintiffs' claims in-

---

**3.** Plaintiffs bring the following claims:
1) Count 1—trespass on July 10, 1997;
2) Count 4—intentional infliction of emotional distress by outrageous conduct on July 10, 1997;
3) Count 5—trespass on July 11, 1997;
4) Count 8—intentional infliction of emotional distress by outrageous conduct on July 11, 1997;
5) Count 9—Trespass on July 11, 1997 with warrant;
6) Count 12—intentional infliction of emotional distress by outrageous conduct on July 11, 1997 with search warrant;
7) Count 13—tort of civil conspiracy;
8) Count 14—invasion of privacy by false light by warrantless searches July 10 and 11, 1997 and by warranted search on July 10, 1997;
9) Count 16—tortious interference with existing contractual relations regarding July 11, 1997 warranted search;
10) Count 17—tortious interference with prospective business advantage regarding July 11, 1997 warranted search;
11) Count 18—trespass on October 9, 1997;
12) Count 21—outrageous conduct causing great emotional stress regarding October 9, 1997 warranted search;
13) Count 22—physical intrusion upon the seclusion regarding October 9, 1997 warranted search;
14) Count 23—false light regarding October 9, 1997 warranted search;
15) Count 25—tortious interference with existing contractual relations regarding October 9, 1997 warranted search;
16) Count 26—tortious interference with prospective business advantage regarding October 9, 1997 warranted search;
17) Count 27—false arrest; and
18) Count 28—abuse of process.

volve intentional torts and allege willful and malicious conduct by defendants. Plaintiffs' claims do not sound in negligence. " 'Only negligent or wrongful acts or omissions of employees are excepted from liability by 75–6104, while acts or omissions involving more than the lack of ordinary care and diligence are not.' " *Moran v. State*, 267 Kan. 583, 596, 985 P.2d 127, 136 (1999) (citing *Hopkins v. State*, 237 Kan. 601, 611, 702 P.2d 311, 318–19 (1985)). "[S]ection 75 6104 exception to liability only protects negligent conduct, but not willful or wanton acts by governmental employees." *Burgess v. West*, 817 F.Supp. 1520, 1526 (D.Kan.1993). In other words, government officials have the right to err in performing their job, but not to act in bad faith. *Beck v. Kan. Adult Auth.*, 241 Kan. 13, 19, 735 P.2d 222, 228 (1987). Plaintiffs allege that defendants acted willfully and maliciously. Taking plaintiffs' allegations of willful conduct as true, as required by the motion to dismiss standard, defendants are not entitled to immunity under the exceptions contained in the KTCA.

Defendants specifically assert that § 75–6104(e) provides immunity to them. As noted in its November 8, 1999 order, the court disagrees. Section 75–6104(e) protects governmental entities and employees acting within the scope of their employment for damages resulting from: "(e) Any claim based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a governmental entity or employee, whether or not the discretion is abused and regardless of the level of discretion involved." Kan. Stat. Ann. § 75–6104(e).

■ For completeness of this order, the court repeats a portion of its prior analysis here. Plaintiffs' allegations, when viewed in the light most favorable to plaintiffs, show that defendants who went to the properties at issue were acting in accordance with illegal policies. Therefore, according to plaintiffs' complaint, the actions of these defendants were not discretionary; defendants' illegal policies directed the actors to commit the alleged torts. See *Nero v. Kan. State Univ.*, 253 Kan. 567, 585, 861 P.2d 768, 781 (1993) (where mandatory duty or guideline is clearly defined, discretionary function exception not applicable). In addition, plaintiffs allege that defendants violated municipal ordinances which required defendants to obtain a refusal or entry from someone in control of the property before they could obtain a search warrant. Again, assuming the truth of plaintiffs' allegations, defendants' searches based upon the warrants therefore violated mandatory guidelines and do not qualify as discretionary. See *Kan. State Bank & Trust Co. v. Specialized Transp. Servs., Inc.*, 249 Kan. 348, 366, 819 P.2d 587, 600 (1991) (failure to follow mandatory guidelines not within KTCA discretionary function exception). Most importantly, while the creation of the illegal policies may have been discretionary, defendants did not have discretion to willfully commit torts as alleged in plaintiffs' complaint. *Moran*, 267 Kan. at 596, 985 P.2d at 136; *Lindenman v. Umscheid*, 255 Kan. 610, 639, 875 P.2d 964, 982 (1994) (government does not have discretion to maliciously prosecute).

In their motion, defendants rely on *Green v. City of Wichita, Kan.*, 47 F.Supp.2d 1273 (D.Kan.1999). The Green court granted summary judgment to defendants, finding the KTCA shields municipal defendants from liability on state law claims arising from their enforcement of a housing code unless there is proof that the defendants acted in a malicious or reckless manner. The plaintiffs in Green "produced no evidence, outside of their own personal feelings and beliefs, that the defendants acted in a malicious or reckless

manner." *Id.* at 1278. The claims dismissed in Green included defamation, tortious interference with contract rights, outrage, and abuse of process, all based upon defendants' enforcement of a municipal housing code by issuing citations, by placing placards on plaintiffs' rental properties which hindered plaintiffs' ability to rent and sell the properties, and by inspecting plaintiffs' properties without permission or probable cause. Although the facts in Green are similar to those before this court, the burden on the plaintiffs here is different than that applied in Green. The Green court examined whether plaintiffs made "a showing of more than what the plaintiffs feel and believe, without any supporting evidence," as was required to survive summary judgment. Here, however, the plaintiffs need only make allegations of maliciousness or recklessness to survive a motion to dismiss. As noted above, they have met their burden.

Accordingly, based on plaintiffs' complaint, defendants are not covered by the discretionary function exception of the KTCA. Defendants' motion to dismiss plaintiffs' state law claims on this basis is denied.

### E. Failure to State Claim for Deprivation of Due Process (Count 24)

■ Defendants seek the court to dismiss plaintiffs' claim for deprivation of due process. Based on the course of conduct occurring after the searches of plaintiffs' property, plaintiffs claim defendants denied them their substantive due process rights.[4] To be entitled to substantive due process, plaintiffs must allege the deprivation of liberty or property. See *Tonkovich*, 159 F.3d at 527. Plaintiffs allege that they have a liberty and property interest in "the continued operation of their respective business, and business reputation and goodwill without unjustified, unlawful, and abusive interference by government officials for illegitimate reasons." Defendants have not challenged this assertion of a liberty or property interest. Without the benefit of argument from the parties, the court assumes for purposes of this motion that plaintiffs have adequately alleged deprivation of a liberty or property interest.

Even with this assumption, plaintiffs' substantive due process claim is subject to dismissal. As noted in its November 8, 1999 order, plaintiffs' substantive due process claim fails to identify any fundamental right defendants denied them. Only where plaintiffs allege violation of a fundamental right is defendants' conduct subject to strict scrutiny. *Washington v. Glucksberg*, 521 U.S. 702, 721, 117 S.Ct. 2258, 138 L.Ed.2d 772 (1997). Plaintiffs have the burden to identify the rights allegedly violated. *Tonkovich*, 159 F.3d at 527; *Babbar v. Ebadi*, 36 F.Supp.2d 1269, 1282 (D.Kan.1998). Liberally construing plaintiffs' substantive due process claim, plaintiff Watson alleges that defendants deprived her of her right to maintain her building repair permit, and all plaintiffs

4. As in its November 8, 1999 order, the court again notes that based on the allegations in the complaint, it appears that plaintiffs may actually intend to bring a procedural due process claim regarding this course of conduct. Plaintiffs, however, bear the burden of pleading the type of due process claim. See *Tonkovich*, 159 F.3d at 527 ("defendants should not be required to guess whether [plaintiff] pled a substantive due process claim, a procedural due process claim, or both"). In addition, the court is not plaintiffs' advocate and will not construct arguments or theories for them. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir.1991). Although plaintiffs' modified second amended complaint titles their claim "due process," based on the prior complaints, wherein the plaintiffs titled their claim as one for substantive due process and where no further clarification is provided by plaintiffs, the court construes plaintiffs' claim here as one for substantive due process.

allege defendants deprived them of their right to decide where to live (i.e., to remain in their rented or owned properties), and more generally deprived them of their right to privacy. As discussed in its November 8, 1999 order, plaintiffs' allegations regarding a right to privacy and to decide where to live are not fundamental rights. See generally *Wimber v. Dep't of Soc. and Rehab. Servs.*, 1994 WL 192039 at *8 (D.Kan. Apr. 13, 1994). In addition, plaintiff Watson has cited the court no case law which establishes a fundamental right to maintain a building repair permit, and the court's research has disclosed no such fundamental right. Therefore, plaintiffs' substantive due process claims are not subject to strict scrutiny analysis.

■ Therefore, the court must determine whether defendants' actions "would 'shock the conscience of federal judges.'" *Uhlrig v. Harder*, 64 F.3d 567, 573 (10th Cir.1995) (quoting *Collins v. City of Harker Heights*, 503 U.S. 115, 126, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992) (further quotation omitted)). To satisfy this standard, "a plaintiff must do more than show that the government actor intentionally or recklessly caused injury to the plaintiff by abusing or misusing government power;" indeed, plaintiff "must demonstrate a degree of outrageousness and a magnitude of potential or actual harm that is truly conscience shocking." *Id.* To meet this standard, plaintiffs must allege "a high level of outrageousness." *Id.* at 574. As the Tenth Circuit has stated,

> [i]n order to discern whether the facts of the instant case "shock the conscience" so as to rise to the level of a substantive due process violation, we must bear in mind three basic principles highlighted by the Supreme Court in evaluating substantive due process claims: (1) the need for restraint in defining their scope; (2) the concern that § 1983 not replace state tort; and (3) the need for deference to local policymaking bodies in making decisions impacting upon public safety.

*Id.* at 573 (internal citations omitted). Keeping these considerations in mind, conduct most likely to shock the conscience is "conduct intended to injure in some way unjustifiable by any government interest." *County of Sacramento v. Lewis*, 523 U.S. 833, 849, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998).

Even when viewed in the light most favorable to plaintiffs, the allegations in plaintiffs' substantive due process claim hardly violate "the decencies of civilized conduct." *Id.* at 1716. Plaintiffs allege that defendants: (1) dispatched a letter to plaintiff Watson which listed several requirements and alleged code violations, most of which were false and the rest of which were minor and outside Watson's control; (2) directed Watson to hire an engineer and architect to give the city a report and plan on the buildings, even though a court previously had ruled that Watson did not need to do so; (3) notified Watson she would have to secure building permits without taking notice that Watson already held a valid building permit; (4) failed to use a less intrusive method of entering the plaintiffs' properties by utilizing the valid building permit and attempted to circumvent the judicial restrictions on entering the properties; (5) revoked Watson's building permit on July 21, 1997 and delayed mailing the revocation letter until August 28, 1997; (6) tagged Watson's properties as unfit and notified tenants they would have to leave; (7) terminated Watson's rental license for the properties even though she had paid her fees; (8) failed to hold a hearing regarding the properties despite providing notice of a hearing date on September 8, 1997; and (9) placing a fee on plaintiffs' ability to appeal a decision regarding the properties. Plaintiffs' allegations do not suggest that

defendants acted in an way unjustifiable to any legitimate government interest.

Defendants clearly have a legitimate government interest in closing down buildings which contain fire hazards. Even accepting plaintiffs' allegations listed above as true, defendants acted to shut down properties and not out of any interest other than enforcing the fire code. The court notes that in other portions of the complaint, plaintiffs allege defendants acted maliciously and with an intent to retaliate against plaintiffs. However, plaintiffs do not dispute that some fire code violations existed. And plaintiffs' chief complaint under their substantive due process claim still appears to be that defendants violated the law in enforcing the fire code. While defendants conduct may have been unlawful in some respects, plaintiffs' allegations fail to allege conduct which is conscience-shocking to federal judges. Plaintiffs do not cite case law on this issue and the court finds none suggesting a different outcome.

Defendants argue that the remedy for plaintiffs' claim relating to the enforcement of municipal housing codes "were with the Kansas state courts." Defendants assert that plaintiffs' claims, brought under the guise of 42 U.S.C. § 1983, are asking the court to "sit as a judicial housing authority." Defendants assert that plaintiffs' claim, alleging that defendants' enforcement of a municipal housing code was unfair, does not rise to the level of a federal due process claim. However, plaintiffs provide no authority for their argument and the court finds it unnecessary to reach this argument based upon its above analysis regarding plaintiffs' substantive due process claim.

Accordingly, the court finds plaintiffs have failed to state a substantive due process claim. Defendants' motion to dismiss Count 24 of plaintiffs' complaint is granted.

### ● Failure to State Claim for Tort of Outrage (Counts 4, 8, 12, 21)

 Defendants seek the court to dismiss plaintiffs' claims of outrage. In Counts 4, 8, 12, and 21 of their complaint, plaintiffs allege defendants' actions in unreasonably and unlawfully searching plaintiffs' property on July 10 and 11 and October 9, 1997 constitute the tort of outrage pursuant to Kansas law.

### ● Tort of Outrage

Proof of four elements is required to establish a cause of action of outrage: "(1) The conduct of defendant must be intentional or in reckless disregard of plaintiff; (2) the conduct must be extreme and outrageous; (3) there must be a causal connection between defendant's conduct and plaintiff's mental distress; and (4) plaintiff's mental distress must be extreme and severe." *Roberts v. Saylor*, 230 Kan. 289, 292, 637 P.2d 1175, 1179 (1981).

However, the Kansas Supreme Court has established "two threshold requirements that must be met and which the court must, in the first instance, determine: (1) Whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery; and (2) whether the emotional distress suffered by plaintiff is in such extreme degree the law must intervene because the distress inflicted is so severe that no reasonable person should be expected to endure it." *Id.* Under the first requirement, the alleged conduct must be "so outrageous in character, and so extreme in degree, as to go beyond the bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society." *Id.* at 293, 637 P.2d at 1179; *Taiwo v. Vu*, 249 Kan. 585, 592, 822 P.2d 1024, 1029 (1991). "Mere insults, indignities, threats, annoyances, petty expressions, or other trivialities" do not rise to the level of actionable

outrageous conduct. *Roberts*, 230 Kan. at 293, 637 P.2d at 1179. "The overwhelming majority of Kansas cases have held in favor of defendants on the outrage issue, finding that the alleged conduct was insufficiently outrageous to support the cause of action." *Lindemuth v. Goodyear Tire & Rubber Co.*, 19 Kan.App.2d 95, 100, 864 P.2d 744, 749 (1993).

● **Plaintiffs' Allegations**

Plaintiffs' specific allegations regarding the tort of outrage are summarized here. Regarding the July 10 and 11 warrantless searches, plaintiffs allege that: (1) on July 10, defendants planned and conducted illegal unconstitutional, warrantless searches of plaintiffs' property; (2) on July 11, a party of 7 to 10 uniformed officers, agents, or employees of defendant Kansas City, Kansas conducted a warrantless search of the back yard and curtilage of plaintiffs' properties; (3) on July 11, defendants shoved a camcorder in plaintiff Watson's face as she exited her vehicle and demanded entry to examine the door locks in the residential and commercial tenant spaces, alleging there were "loose bricks on the front of the building;" (4) on July 11, 1997, defendants opened the gate to plaintiffs Steve and Christine Perry's private property, entered their property, invaded their tomato garden, and videotaped their home and garden, all despite the fact that the property was posted with a "no trespassing" sign and the fact that Steve Perry informed defendants on July 10 they had no right to be on the property without the owners' consent; (5) defendants attempted to peer into bedroom windows on the north side of the plaintiffs' properties and to open the doors to the basement of one of the units; (6) defendants intruded into the back yard area of the properties where the plaintiffs sit in lawn furniture in the evenings, cookout, visit and keep their personal pets, boats and personal property; and (7) the areas searched by defendants are not open to the public, nor easily accessible.

Further, regarding the July 11 warranted search, plaintiffs allege: (1) on July 11, defendants obtained a general search warrant for the plaintiffs' properties that failed to contain the name of the owner or any of the tenants' names or apartment numbers; (2) defendants conspired to initiate a course of conduct calculated to induce a Wyandotte County, Kansas District Court Judge to issue the search warrant; (3) defendants corroborated to draft and provide input into an affidavit in support of the search warrant application, locate a judge, and have the application heard; (4) defendant Rust, in the affidavit and in sworn testimony, gave false and misleading information; (5) defendant Rust showed a reckless disregard for the truth, deliberately omitted material facts, including the fact a repair permit existed for the plaintiffs' properties; (6) no tenant denied defendants entry because no demand for entry was made prior to the warranted searches; (7) only plaintiff Watson, not any residential or commercial tenant, was ordered to be at the properties during the execution of the July 11 search warrant; (8) defendant Ohler seized plaintiffs' properties at 1215 Central by ordering that only Watson and Steve Perry could enter the building, placing police guards at the entrance to the buildings, who were overheard saying they were present to close the buildings down; (9) the execution of the search warrant took three hours; (10) although the search warrant authorized defendants to inspect for "[f]ire code, building code and life safety violations," defendants far exceeded the scope of the warrant; and (11) defendants went to each separate address, both residential and commercial, vacant and occupied, threatened the tenants, investigated the tenant's private refrigerators, bathrooms, and interiors of cabinets, forced entry into sealed

basement areas, refused to wait for plaintiffs to provide proper tools to allow access, broke plaintiff Watson's window to gain entry into an occupied apartment while the tenant was at work, terrorized the tenants and frightened children of plaintiffs, causing damages of over $400.

Regarding the October 9, 1997 warranted search, plaintiffs allege: (1) on October 8, defendant Kansas City, Kansas's city attorney requested from plaintiff Watson's attorney entry to re-inspect the plaintiff's properties and the request was denied; (2) defendant Kansas City, Kansas again failed to request consent to search from all occupants of the property; (3) defendants applied for and received another search warrant for plaintiffs' properties; (4) the search warrant was issued, based upon the same, false, misleading and inaccurate affidavit used for the July 11 warrant and incorporated a false and misleading report; (5) defendants obtained a second general search warrant for the re-inspection of the same properties and the warrant again failed to contain the name of the owner or tenants or apartment numbers of the properties; (6) defendants executed the search warrant on October 9, at approximately 1:50 p.m.; and (7) the search warrant obtained on July 11, 1997 was quashed and the resulting evidence suppressed in Wyandotte County District Court, where a separate case raised against plaintiff Watson by some defendants herein was dismissed.

Finally, plaintiffs allege that by defendants' willful, malicious, and unconstitutional actions, they committed outrageous conduct which caused great emotional stress to plaintiffs.

● **Analysis**

Examining the facts alleged above, the court finds defendants' actions are not "so extreme and outrageous as to permit recovery," because defendants' actions, as alleged, are not "so outrageous in charac-

ter, and so extreme in degree, as to go beyond the bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society." *Roberts*, 230 Kan. at 292, 637 P.2d at 1179. Plaintiffs' allegations regarding two warrantless entries and two entries incident to warrants obtained under false statements, and their allegations that all actions were taken with bad motive do not meet the threshold test imposed upon the court.

Significant to the court is the Green case, wherein this court, relying upon Kansas state court precedent, granted summary judgment to municipal defendants on their tort of outrage. *Green*, 47 F.Supp.2d at 1282. In Green, plaintiffs alleged that they were given numerous unreasonable housing code citations, that defendants placarded plaintiffs' rental property, that defendants unlawfully entered plaintiffs' premises without authorization, and that plaintiffs were forced to appear in court numerous times on housing code violations. The Green court found none of this conduct could be viewed as "atrocious and utterly intolerable in a civilized society." The court finds the Green court's allegations similar to those alleged here. Plaintiffs allege defendants unlawfully and maliciously entered their properties both with and without a warrant. In addition, plaintiffs allege defendants obtained the warrants used to access their properties using false and misleading information. The court is not convinced that the actions alleged, taken in their totality, are "atrocious and utterly intolerable in a civilized society."

Plaintiffs have not been able to cite the court to any case suggesting a different outcome. Plaintiffs argue that no other case has examined a situation such as that presented here, where the alleged conduct has continued for "almost six years." First, the court finds the Green case simi-

larity provides appropriate guidance for this court's decision. And second, upon a search of plaintiffs' allegations of outrage in Counts 4, 8, 12, and 21, including their incorporated paragraphs, the court finds no allegations of continuous conduct for "almost six years." Where such allegation has not been raised in the complaint, as amended several times in this case, the court will not rely upon it in deciding this motion.

Accordingly, defendants' motion to dismiss plaintiffs' claims of outrage pursuant to Fed.R.Civ.P. 12(b)(6) is granted. Counts 4, 8, 12, and 21 of plaintiffs' complaint are dismissed.

### • Failure to State Claim for Abuse of Process (Count 28)

Defendants seek the court to dismiss plaintiffs' claim for abuse of process. In Count 28, plaintiffs allege defendants' actions constitute abuse of process. Plaintiffs' theory appears to be that defendants abused process by searching the plaintiffs' property with and without a warrant, by obtaining a warrant with false information, and by their conduct when searching the properties.

To state a claim for abuse of process under Kansas law, plaintiff must establish:

(1) an ulterior motive in the use of regular court process; and (2) the defendant committed an act in the use of process not proper in the regular prosecution of the proceeding.

*Lindenman*, 255 Kan. at 621, 875 P.2d at 973; *Welch v. Shepherd*, 169 Kan. 363, 366, 219 P.2d 444, 447 (1950).

The court finds plaintiffs' allegations of abuse of process are sufficient to state a claim. As noted above, the court will dismiss a cause of action for failure to state a claim only when it appears beyond a doubt the plaintiff can prove no set of facts in support of the theory of recovery that would entitle him to relief. *Conley*, 355 U.S. at 45–46, 78 S.Ct. 99. Here, plaintiff

has alleged an ulterior motive, i.e., that defendants were on plaintiffs' property expressly for the purpose of finding a way to shut plaintiffs' building down, rather than for protection of the tenants or the city and that defendants were motivated by their desire to "retaliate" against plaintiff Watson for her vocal opposition to defendant Kansas City, Kansas's practices regarding rental licensing. In addition, plaintiffs allege that defendants presented false and misleading testimony to the Wyandotte County District Court when obtaining a search warrant for plaintiffs' properties. The court construes this allegation as sufficient to allege that defendants committed an act in the use of process not proper in the regular prosecution of the proceeding at issue. That is, defendants engaged in dishonest behavior by making false representations to the District Court to obtain a search warrant.

Defendants cite Green in support of their argument for dismissal. 47 F.Supp.2d 1273. However, the Green court, when examining the record on the summary judgment motion, found there was no evidence to support plaintiff's claims of improper motive including defendants' issuance of citations under the housing code to harass plaintiffs, forcing plaintiffs out of the rental business, and raising revenue for the City defendant. However, as noted above, the standard on defendants' motion to dismiss is different than the standard applied in Green. Here, plaintiffs need only make allegations sufficient to state a claim, they are not required to produce evidence that their allegations, when supported by "affidavits or depositions, answers to interrogatories, and admissions on file, ... showing there is a genuine issue for trial." *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548. The issue in resolving a motion to dismiss is not whether the plaintiff will ultimately prevail, but whether he or she is entitled to offer evi-

dence to support the claims. See *Scheuer*, 416 U.S. at 236, 94 S.Ct. 1683.

Accordingly, defendants' motion to dismiss Count 28 of plaintiffs' complaint is denied.

● **Failure to State Claim for Invasion of Privacy by False Light (Counts 14, 23)**

■ Defendants seek the court to dismiss plaintiffs' claims for invasion of privacy by false light. In Count 14, plaintiffs allege defendants' actions in submitting a false application for a search warrant and for improperly executing such search warrant on July 11, 1997 constituted invasion of privacy by false light.[5] In addition, in Count 23, plaintiffs allege defendants' actions in submitting a false application for a search warrant and for improperly executing such search warrant on October 9, 1997 constituted invasion of privacy by false light.

To state a claim for invasion of privacy by false light, plaintiffs must establish: (1) publication to a third party; (2) that the publication falsely represents plaintiff; and (3) that the representation would be highly offensive to a reasonable person. *Castleberry v. Boeing Co.*, 880 F.Supp. 1435, 1442 (D.Kan.1995). Defendants assert that their execution of the searches on July 11 and October 9 do not satisfy the publication requirement, nor do they place any of the plaintiffs in a false light of a kind highly offensive to an ordinary person.

In the context of an invasion of privacy by false light claim, publication means "the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of

public knowledge." *Ali v. Doublas Cable Comm.*, 929 F.Supp. 1362, 1383 (D.Kan. 1996). Comment a of the Restatement (Second) of Torts § 652D provides that "publication in a newspaper or a magazine, even of small circulation, or in a handbill distributed to a large number of persons, or any broadcast over the radio, or statement made in an address to a large audience, is sufficient to give publicity within the meaning of the term." The Restatement makes a distinction between "private and public communication," with the latter satisfying the publication element of invasion of privacy by false light. Restatement (Second) of Torts § 652D, at 384–85.

Plaintiffs argue that defendants' actions in having a presence on plaintiffs' property for extended periods of time on July 11 and October 9 constitute publication. Specifically, plaintiffs argue that "[a] crowd of gawking people standing at locations across the street, down the street, and driving by, observed numerous uniformed employees of defendant Kansas City, Kansas surrounding [plaintiffs' property] and armed police officers blocking the entrance to 1215 Central" constitutes publication. Further, plaintiffs argue that plaintiffs' properties are on a highly traveled street, allowing passers-by during these time periods to be exposed to the defendants' actions.

Neither party has produced case law indicating that the type of publication alleged by plaintiffs-where the public is informed by passing by the conduct in question-is sufficient to maintain a claim for invasion of privacy by false light. However, the court finds, when examining plaintiff's claims under a 12(b)(6) standard, that plaintiffs have made allegations sufficient

---

**5.** Although plaintiffs' have titled Count 14 "Invasion of Privacy by False Light Warrantless Searches 7–10–97[,] 7–11–97 and search warrant 7–10–97," upon examination of the

allegations raised in Count 14, the court construes this claim as raising allegations related to the warranted search on July 11, 1997 only.

to assert the publication element of their claim.

Defendants next argue that none of their actions in obtaining or executing the search warrants on July 11 or October 9 placed any of the plaintiffs in a false light of a kind highly offensive to an ordinary person. To survive a motion to dismiss, plaintiffs must make allegations sufficient to show (1) that the publication at issue falsely represents plaintiffs and (2) that the representation would be highly offensive to a reasonable person. *Castleberry*, 880 F.Supp. at 1442. Plaintiffs assert that defendants' actions, as noted herein, "would impute to those persons [viewing the actions] that such a show of force indicated a crime of substantial nature had taken place, [although this] was in fact false." Although plaintiffs have not produced evidence that any passerby viewed the defendants' searches and falsely believed plaintiffs had engaged in a substantial crime, that is not their burden on a motion to dismiss. In addition, plaintiffs have alleged that they were "offended" and/or injured by the defendants' actions in invading their privacy by placing them in a false light. Further, defendants have not presented the court with any precedent indicating that such allegations are insufficient to state these two elements of plaintiffs' invasion of privacy by false light claim.

Accordingly, defendants' motion to dismiss plaintiffs' invasion of privacy by false light claims, contained in Counts 14 and 23 of plaintiffs' complaint, is denied.

● **Punitive Damages Not Recoverable Against Municipal Defendant**

 In their papers, defendants and plaintiffs agree that neither the municipal defendant, nor the individual defendants acting in their official capacity, are subject to punitive damages, either under the plaintiffs' § 1983 claims or under the state law claims. However, plaintiffs assert that "should the individual defendants be deemed to have acted outside the scope of their employment, then their action should be subject to punitive damages and that issue submitted to the jury." Plaintiffs provide no support for their argument.

Accordingly, the court finds neither the municipal defendant, nor the individual defendants acting in their official capacity, are subject to punitive damages, either under the plaintiffs' § 1983 claims or under the state law claims. Any portion of plaintiffs' complaint asserting such claim for punitive damages is dismissed. The court does not reach plaintiffs' argument regarding individual defendants acting outside the scope of their employment, but notes the plaintiffs may present such argument at or before the trial of this matter, as it relates to the presentation of evidence or the instruction of the jury.

● **Order**

The court notes that even if plaintiffs have sufficiently alleged that defendants where plaintiffs have failed to state a claim as to the allegedly unlawful July 10 warrantless search.[6] Plaintiffs have not set forth facts to support the four factors listed above in regards to the July 10 searches. Plaintiffs' only allegations regarding the July 10 search are that defendants entered the outside of plaintiffs' properties without consent, probable cause, or exigent circumstances and that plaintiffs had marked the properties with "no trespassing" signs. As noted in its November 8 order, while posting of "no trespassing" signs is a step taken to pro-

---

**6.** Accordingly, the court does not reach the second step of the qualified immunity analysis to determine whether the constitutional rights the defendant allegedly violated were clearly established at the time of the conduct at issue. See *Albright*, 51 F.3d at 1534 (setting forth two part qualified immunity test).

tect plaintiffs' expectation of privacy, it alone is insufficient to find that defendants invaded the curtilage of the properties. See *Oliver v. United States*, 466 U.S. 170, 179, 104 S.Ct. 1735, 80 L.Ed.2d 214 (1984); *United States v. Sumner*, 793 F.Supp. 273, 275 (D.Kan.1992). Although plaintiffs have provided more detail as to the areas surrounding plaintiffs' properties, they still have provided any detail as to the defendants' actions in entering the properties on July 10, i.e., what portion of the outside of the properties defendants entered. The court finds without such detail, plaintiffs have failed to state a claim as to the July 10 warrantless searches. Therefore, Count 3 of plaintiffs' complaint is dismissed as to all defendants.

 In addition, the court sua sponte dismisses Count 2 of plaintiffs' modified second amended complaint for failure to state a claim. Count 2 alleges violations of Article 15 of the Kansas Bill of Rights. The Kansas Supreme Court has recognized that "Although we have the right to interpret our Kansas constitution in a manner different than the United States Constitution has been construed, ... we have not traditionally done so." *State v. Scott*, 265 Kan. 1, 5, 961 P.2d 667, 670 (1998). The court has found no authority showing that plaintiffs' claims for deprivation of rights guaranteed under the Kansas Constitution can be stated where their parallel federal constitutional claims have been dismissed. Accordingly, the court dismisses Count 2 of plaintiffs' complaint as to all defendants.

IT IS THEREFORE ORDERED that defendants' motion for partial dismissal of modified second amended petition for damages (Doc. 117) is granted in part. Specifically, Count 3 is dismissed as to the individual defendants. Count 7 is dismissed as to all individual defendants except as to plaintiffs Steve and Christine Perry's claims. Count 15 is dismissed as to all individual defendants. Count 24 dismissed as to all defendants. Counts 4, 8, 12, and 21 for tort of outrage are dismissed as to all defendants. Finally, any claims for punitive damages against the municipal defendant or the individual defendants in their official capacities are dismissed.

In addition, defendants' motion for partial summary judgment (Doc. 105) is denied. Plaintiffs' brief in response (Doc. 123) is moot.

Therefore, the claims that remain pending following the court's order include:

- Count 1—Trespass on July 10, 1997;
- Count 2—Kansas Bill of Rights Article 15 based on July 10, 1997 warrantless search;
- Count 3—Section 1983 Fourth Amendment claim based on July 10, 1997 warrantless search against the municipal defendant;
- Count 4—intentional infliction of emotional distress by outrageous conduct on July 10, 1997;
- Count 5—Trespass on July 11, 1997;
- Count 6—Kansas Bill of Rights Article 15 based on July 11, 1997 warrantless search;
- Count 7—Section 1983 Fourth Amendment claim based on July 11, 1997 warrantless search only as to plaintiffs Steve and Christine Perry against all defendants;
- Count 8—Section 1983 Fourth Amendment claim based on July 11, 1997 warrantless search against the municipal defendant;
- Count 9—Trespass on July 11, 1997;
- Count 10—Kansas Bill of Rights Article 15 based on July 11, 1997 warranted search;
- Count 11—Section 1983 Fourth Amendment claim based on July 11, 1997 warranted search;

- Count 13—Tort of civil conspiracy;
- Count 14—Invasion of privacy by false light related to July 11, 1997 warranted search;
- Count 15—Section 1983 First Amendment protected expression claim against the municipal defendant only;
- Count 16—Tortious interference with existing contractual relations related to July 11, 1997 warranted search;
- Count 17—Tortious interference with prospective business advantage related to July 11, 1997 warranted search;
- Count 18—Trespass on October 9, 1997;
- Count 19—Kansas Bill of Rights Article 15 based on October 9, 1997 warranted search;
- Count 20—Section 1983 Fourth Amendment claim based on October 9, 1997 warranted search;
- Count 22—Physical intrusion upon the seclusion related to October 9, 1997 warranted search;
- Count 23—False light related to October 9, 1997 warranted search;
- Count 25—Tortious interference with existing contractual relations related to October 9, 1997 warranted search;
- Count 26—Tortious interference with prospective business advantage related to October 9, 1997 warranted search;
- Count 27—False arrest related to plaintiff Steve Perry; and
- Count 28—Abuse of process.

**IT IS SO ORDERED.**